Joshua M. Sasaki, P.C., OSB No. 964182
Josh.sasaki@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: (503) 224-5858
Facsimile: (503) 224-0155

*Attorneys for Defendants Blount International, Inc.,
Robert E. Beasley, Jr., Ronald Cami, Andrew C.
Clarke, Nelda J. Connors, E. Daniel James,
Harold E. Layman, Max L. Lukens, and Daniel J.
Obringer*

B. John Casey, OSB No. 120025
john.casey@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97258
Telephone: (503) 228-3200
Facsimile: (503) 248-9085

*Attorneys for Defendants Joshua L. Collins and David A.
Willmott*

[ADDITIONAL COUNSEL APPEAR ON
SIGNATURE PAGE]

Blount Defendants' Reply Brief in Further Support of Their Motion to Dismiss Plaintiffs'
Amended Class Action Allegation Complaint

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ELIA AZAR and DEAN ALFANGE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>    v.<br><br>BLOUNT INTERNATIONAL, INC., JOSHUA L. COLLINS, DAVID A. WILLMOTT, ROBERT E. BEASLEY, JR., RONALD CAMI, ANDREW C. CLARKE, NELDA J. CONNORS, E. DANIEL JAMES, HAROLD E. LAYMAN, MAX L. LUKENS, DANIEL J. OBRINGER, AMERICAN SECURITIES, LLC, P2 CAPITAL PARTNERS LLC, ASP BLADE INTERMEDIATE HOLDINGS, INC., and ASP BLADE MERGER SUB, INC.,<br><br>Defendants. | Case No. 3:16-cv-00483-SI<br><br>BLOUNT DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION ALLEGATION COMPLAINT |

Blount Defendants' Reply Brief in Further Support of Their Motion to Dismiss Plaintiffs' Amended Class Action Allegation Complaint

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .......................................................................................................ii

I.    PRELIMINARY STATEMENT .................................................................................1

II.   ARGUMENT ...............................................................................................................2

A.    Plaintiffs' Section 14(a) Claim Must Be Dismissed. ..........................................2

    1.    Plaintiffs Failed to Allege How the Omission of the Stale "September
Projections" Made the Proxy Materially False or Misleading. ...............................3

        (a)    The Older Financial Projections Were Immaterial as a Matter of
Law. ..............................................................................................................4

        (b)    The Amended Complaint Pleads No Facts Suggesting That the
"September Projections" Were "More Accurate" Than the
November or December Projections. .............................................................6

    2.    Plaintiffs Failed to Plead Negligence with Any Particularity. ................................9

    3.    Plaintiffs Failed to Plead Loss Causation. .............................................................10

III.  CONCLUSION...........................................................................................................13

## **TABLE OF AUTHORITIES**

PAGE(S)

### CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................3, 8

*Assad v. Mines Mgmt., Inc.*,
  No. 2:16-CV-00256-SMJ,
  2016 U.S. Dist. Lexis 119544 (E.D.Wash. Sept. 2, 2016)......................................8-9

*Brown v. Brewer*,
  No. CV 06-3731-GHK (SHx), 2010 WL 2472182 (C.D. Cal. June 17, 2010).........................10

*City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*,
  No. C 07-05111 CW, 2009 WL 942182 (N.D. Cal. April 6., 2009).........................................10

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ...........................................................................................3

*David P. Simonetti Rollover IRA v. Margolis*,
  C.A. No. 3694-VCN, 2008 WL 5048692 (Del. Ch. June 27, 2008)............................................5

*Doft & Co. v. Travelocity.com Inc.*,
  C.A. No. 19734, 2004 WL 1152338 (Del. Ch. May 20, 2004) ...................................................6

*Gerstle v. Gamble-Skogmo, Inc.*,
  478 F.2d 1281 (2d Cir. 1973).........................................................................................10

*In re Emerging Commc'ns, Inc. S'holders Litig.*,
  C.A. No. 16415, 2004 Del. Ch. LEXIS 70 (Del. Ch. May 3, 2004)..........................................5

*In re Hot Topic, Inc. Secs. Litig.*,
  No. CV 13-029 SJO (JCx),
  2014 U.S. Dist. LEXIS 180513 (C.D.Cal. May 2, 2014) ................................................. *passim*

*In re JPMorgan Chase & Co. Secs. Litig.*,
  MDL No. 1783, C.A. No. 06 C 4674, 2007 WL 4531794 ......................................................10

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F.Supp.2d 1248, 1267 (N.D. Cal. 2000) ...............................................................................9

*In re MONY Grp. Inc. S'holder Litig.*,
  852 A.2d 9, 25-28 (Del. Ch. 2004) ...........................................................................................9

*In re Netsmart Technologies, Inc. S'holders Litig.*,
    924 A.2d 171 (Del. Ch. 2007)..................................................................................4, 5

*In re Pure Resources, Inc. S'holders Litig.*,
    808 A.2d 421 (Del. Ch. 2002)........................................................................................9

*Knollenberg v. Harmonic, Inc.*,
    152 F. App'x 674 (9th Cir. 2005). ..................................................................................9

*Krieger v. Atheros Commc'ns*,
    No. 11-CV-00640, 2012 WL 1933559 (N.D. Cal. May 29, 2012)..............................12

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)......................................................................................................10

*N.Y. City Emps.' Ret. Sys. v. Jobs*,
    593 F.3d 1018 (9th Cir. 2010) ........................................................................................2

*SEC v. Texas Gulf Sulphur Co.*,
    401 F.2d 833 (2d Cir. 1968)...........................................................................................3

*Tracinda Corp. v. DaimlerChrysler AG*,
    197 F. Supp. 2d 42 (D. Del. 2002)...............................................................................11

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976).........................................................................................................3

*United States v. Smith*,
    155 F.3d 1051 (9th Cir. 1998) ........................................................................................3

*Vaughn v. Teledyne, Inc.*,
    628 F.2d 1214 (9th Cir. 1980) ........................................................................................9

<u>STATUTES & RULES</u>

5 U.S.C. § 78u-4(b)(1) .......................................................................................................8

Section 14(a) of the Exchange Act, 17 USC § 78n(a). ..................................... *passim*

Section 20(a) of the Exchange Act, 17 USC § 78t(a). ...................................................2

## I.    **PRELIMINARY STATEMENT**

In their opposition brief, Plaintiffs identify the cornerstone of their argument as a "premise" that the so-called "September Projections"[1] more accurately reflected Blount management's views than two later sets of projections that were disclosed in the Proxy and that were used by Blount's board and its advisors in evaluating the Merger.  Indeed, Plaintiffs insist that the Court must accept this "premise" given the current procedural posture.  But Plaintiffs' "premise" is an entirely conclusory assertion unsupported—and in fact contradicted by—the factual allegations in the Amended Complaint.  The facts incorporated in the Amended Complaint establish that, rather than being a reflection of the Board's and management's current beliefs when the Proxy was issued, the "September Projections" were stale because they did not reflect Blount's actual results for the quarter ending September 30, 2015, or other significant headwinds that were challenging the Company.  Thus, the allegations in the Amended Complaint do not support a reasonable inference that the Proxy contained a material misstatement or omission.  Nor do they support the required strong inference that the failure to disclose stale projections was negligent.

The factual allegations are also insufficient to support a reasonable inference that Plaintiffs sustained any harm.  It is uncontroverted that the Merger consideration represents an 86% premium over the stock's closing price the day before the Merger was announced, an 82% premium to Blount's 30-day average closing price, and a 68% premium to Blount's 90-day average closing price.  Nowhere in the Amended Complaint do Plaintiffs allege that they would

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Blount Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Allegation Complaint (the "Blount Defendants' Motion" or "Mot.").  "Opposition" or "Opp." shall refer to Plaintiffs' Opposition to Blount Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Allegation Complaint.

have secured more but for the alleged omitted disclosure.  Indeed, nowhere in the Amended

Complaint do Plaintiffs allege how much, if at all, the disclosure of the "September Projections"

would have changed anyone's view of the value of the Company or the attractiveness of the

merger consideration.

Accordingly, the Blount Defendants ask that the Amended Complaint be

dismissed with prejudice.

II.    **ARGUMENT**

A.    **Plaintiffs' Section 14(a) Claim Must Be Dismissed.**

To defeat a motion to dismiss, the Amended Complaint must contain "enough

fact[s] to raise a reasonable expectation that discovery will reveal evidence" supporting each

element of their claim under Section 14(a) of the Exchange Act.  (Opp. at 12; Mot. at 12.)[2]

Specifically, the facts alleged must support a reasonable inference that the proxy statement (1)

contained a material misrepresentation or omission that (2) caused Plaintiffs' injury.  *N.Y. City*

*Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010); (*see* Mot. at 16.)  Plaintiffs must

also sufficiently plead that the Blount Defendants acted negligently.  (Mot. at 17.)

As described in the Opposition, "Plaintiffs' premise is simple—the September

Projections were the best estimate of Blount's financial prospects, and it was actionably

deceptive for the Blount Defendants to (1) exclude those figures from the Proxy Statement and

(2) put forward the artificially watered down November Projections and December Projections as

depicting Blount's financial prospects."  (Opp. at 15.)

---

[2] As set forth in the Blount Defendants' Motion, Plaintiffs' Section 20(a) claim
necessarily fails absent a viable Section 14(a) claim.  (Mot. at 28.)

This court in considering a motion to dismiss should, of course, accept as true any well-pleaded facts in the Amended Complaint. However, it may not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, here, the disclosures in the Proxy are incorporated as part of the Amended Complaint and therefore are assumed to be true for purposes of a motion to dismiss unless explicitly contradicted by factual allegations. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

The Amended Complaint's factual allegations simply do not support a reasonable inference as to any element of Plaintiffs' Section 14(a) claim. (*See* Mot. at 20, 21, 27.)

1.    Plaintiffs Failed to Allege How the Omission of the Stale "September Projections" Made the Proxy Materially False or Misleading.

The Supreme Court's decision in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976), sets the standard for determining whether an alleged misstatement or omission is material (Opp. at 14; Mot. at 17), *i.e.*, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the 'total mix' of information made available." *TSC*, 426 U.S. at 449.[3]  Plaintiffs do not and cannot meet this burden.

_____

[3] Plaintiffs' reliance on *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968), in defining "material facts" is inapposite because it pre-dates *TSC*. (*See* Opp. at 14.) *TSC* cites— and rejects—"the conventional tort test of materiality" espoused by the Second Circuit, including in *Texas Gulf*. *See TSC*, 426 U.S. at 445 & n.8 (citing *Texas Gulf*, 401 F.2d at 849). *United States v. Smith*, an insider trading case, is also distinguishable both factually and legally. There, a vice president shorted the company's stock right before the company announced an earnings shortfall of which he had been aware. The court's holding rejected the defendant's "blanket assertion" that "soft information," including "forward-looking statements cannot, as a matter of law, constitute 'material' information within the meaning of Rule 10b-5" in favor of a "nuanced, case-by-case approach." 155 F.3d 1051, 1066 (9th Cir. 1998). The Blount Defendants make no such blanket assertion.

(a)    The Older Financial Projections Were Immaterial as a Matter of Law.

Plaintiffs argue broadly that, "[u]nder established law, financial information like the September Projections is material and should be disclosed." (Opp. at 15.) But the decisions cited by Plaintiffs in their Opposition do not support this argument or suggest that stale projections must be disclosed.

In *In re Netsmart Technologies, Inc. Shareholders Litigation*, the proxy presented two sets of projections, but did not disclose an earlier set of projections or the later projections underlying the fairness opinion. 924 A.2d 171, 200, 202 (Del. Ch. 2007). The *Netsmart* court concluded that failure to disclose the *later* projections used as a basis for the fairness opinion was material, *id.* at 203, while omission of the *earlier* projections was not. *Id.* at 200. Because the proxy did not contain the "*final* . . . projections underlying its ultimate DCF model and fairness opinion[,]" the court reasoned, the proxy had failed to give stockholders "the best estimate of the company's future cash flows at the time the board approved the Merger." *Id.* at 203 (emphasis in original); (*see also* Mot. at 19.) As Plaintiffs acknowledge, "projections of *this* sort are probably among the most highly-prized disclosures by investors." *Id.* (describing the later projections underlying the fairness opinion) (emphasis supplied); (*see* Opp. at 16 (citing *Netsmart*, 924 A.2d at 203).)

Here, consistent with the *Netsmart* court's direction, the disclosures in the Proxy included the two most recent sets of projections, including the projections used to support the fairness opinions disclosed in the Proxy. *In re Netsmart*, 924 A.2d at 203-04 ("[W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed."); (Mot. at 18); *see* Proxy at 61

(disclosing the December Projections); *see also id.* at 62, 64-66 (Goldman relied upon the

December Projections); *id.* at 72 (Greenhill relied upon the December Projections).  If anything,

*Netsmart* undercuts Plaintiffs' position because the court there found that earlier projections, on

which the board and bankers did not rely, did not need to be disclosed.[4]

The Court of Chancery's decision in *In re Emerging Communications, Inc.*

*Shareholders Litigation* is also unavailing.  (*See* Opp. at 16 (citing C.A. No. 16415, 2004 Del.

Ch. LEXIS 70, at *134 (Del. Ch. May 3, 2004)).)  There, the court held that:

> [failing to disclose] the *existence* of the June projections and the fact that those
> projections had been furnished to [the buyer's financial advisor and lender], but
> were withheld from the Special Committee and its advisors . . . was materially
> misleading, not only in its own right but also because the proxy statement
> contained affirmative representations that the public was being provided with the
> same projections to which [the buyer] was privy.

*In re Emerging Commc'ns*, 2004 Del. Ch. LEXIS 70, at 133-34 (emphasis supplied).  Here, there

is no allegation that the Buyers received any projections other than the November and December

Projections, both of which were disclosed.  Moreover, the *existence* of two sets of earlier

projections *was* disclosed to Blount's stockholders, including the "September Projections" and

the October Projections (which Plaintiffs seem content to ignore).  (Mot. at 18.)  In addition, the

Proxy disclosed in detail the adverse developments in Blount's business that led Blount's

---

[4] Citing *Netsmart*, Plaintiffs suggest that more bullish projections are generally material.
(Opp. at 20-21); *see In re Netsmart*, 924 A.2d at 200 (noting that the failure to disclose the
earlier projections was "entirely non-insidious because the later disclosed projections, which
were relied upon [in the fairness opinion] and shaped by management input . . . were more
current and more bullish").  In fact, *Netsmart* and later cases clearly stand for the proposition that
what is material and must be disclosed is management's current view of the company
irrespective of whether it is more bullish or bearish.  *Id.* at 202 (noting that the later projections
take into account recent events and management's "best estimate of the company's future cash
flows"); (*see also* Mot. at 19 (citing later interpretation of *Netsmart* in *David P. Simonetti
Rollover IRA v. Margolis*, C.A. No. 3694-VCN, 2008 WL 5048692, at *10 (Del. Ch. June 27,
2008)).)

management to conclude that the earlier projections were out-of-date.  (Mot. at 9, 18 (citing

Proxy at 38).)

> (b)    The Amended Complaint Pleads No Facts Suggesting That the "September Projections" Were "More Accurate" Than the November or December Projections.

Plaintiffs cannot side-step dismissal by arguing that the relative accuracy of the

"September Projections" is a factual dispute that cannot be resolved at this stage of the

proceedings.  (Opp. at 19.)  As shown by the decisions Plaintiffs cite, *e.g.*, *In re Hot Topic, Inc.*

*Secs. Litig.*, No. CV 13-02939, 2014 U.S. Dist. LEXIS 180513, at *18 (C.D. Cal. May 2, 2014),

the Court can and should resolve on a motion to dismiss whether the *factual* allegations provide a

sufficient foundation to support Plaintiffs' assertion that the "September Projections were the

best estimate of Blount's financial prospects."  Here, the facts that Plaintiffs have alleged—as

opposed to Plaintiffs' naked characterizations and speculation—do not support the inference they

ask the Court to draw.

Plaintiffs acknowledge that "management ordinarily has the best first-hand

knowledge of a company's operations."  (*See* Opp. at 16 (quoting *Doft & Co. v. Travelocity.com*

*Inc.*, C.A. No. 19734, 2004 WL 1152338, at *5 (Del. Ch. May 20, 2004))).  This

acknowledgement counsels in favor of—not against—finding that the November and December

Projections were more reliable than the earlier "September Projections" where, as here, Blount

management specifically informed the Board's financial advisor (and disclosed to investors) that

the "September Projections" were

> no longer current as a result of developments in the Company's business,
> including, among other things, the strengthening U.S. dollar relative to other
> currencies and the correlated adverse impact on the Company's pricing, sales
> volume and market share, as well as other current global economic conditions
> (such as slow growth outside the United States and higher interest rates in the
> United States), the changing competitive landscape (including the adverse impact

from the potential insourcing of the Company's products by certain of the
Company's customers) and the downturn in the industrial sector and the
agriculture market . . . .

(*See* Proxy at 38; Mot. at 21-23.)[5]

Plaintiffs nevertheless argue that it is "*at least plausible* that changes to the

financial projections resulted in a less accurate forecast."  (Opp. at 18 (citing *In re Hot Topic*,

2014 U.S. Dist. LEXIS 180513, at *16-17) (emphasis in Opposition).)  Plaintiffs, however, do

not allege a single fact to support such a notion, and Plaintiffs' heavy reliance on *Hot Topic* is

"instructive" (Opp. at 17), albeit not in a way that is helpful to Plaintiffs' argument.  In *Hot*

*Topic*, the plaintiff alleged that "the assumptions and estimates made in the Revised Projections

were contradicted by 'every public statement made by [Hot Topic] and defendant Harper [over a

two-year period].'"  2014 U.S. Dist. LEXIS 180513, at *6.  Further, the plaintiff identified

specific assumptions in the disclosed projections and alleged that those assumptions were

contrary to the company's stated goals.  *Hot Topic*, 2014 U.S. Dist. LEXIS 180513, at *15.  The

plaintiff also challenged certain adjustments to gross revenues and alleged that they were

inconsistent with "strong improvements" the company saw between 2010 and 2012.  *Id.*  In

short, the plaintiff in *Hot Topic* alleged a *factual* basis for the inference that the disclosed

projections had been "moderated" to underestimate the company's future financial performance.

*Id.* at *18.

---

[5] Plaintiffs' "premise" requires yet another unsupported inference:  that Blount's
management lied to Goldman in informing them that the "September Projections" were "no
longer current."  Proxy at 38; (*see* Opp. at 8.)  As discussed in the Blount Defendants' Motion,
an inference of malfeasance does not reasonably follow from Goldman having conveyed Blount
management's views to the independent members of the Board, who were meeting in executive
session without Blount management.  (Mot. at 21 n.12.)

Page 7 -    Blount Defendants' Reply Brief in Further Support of Their Motion to Dismiss
             Plaintiffs' Amended Class Action Allegation Complaint

By contrast, Plaintiffs allege only that Blount management "anticipated improved third quarter results" that were then realized in quarter-to-quarter gains across a few cherry-picked metrics.  (Opp. at 18; Mot. at 22-23.)  And, as was disclosed in the Proxy and is not contradicted by any allegation in the Amended Complaint, Blount's actual results for the third quarter ending September 30, 2015—which actually declined year-over-year—*were* taken into account in creating the November and December Projections, and could *not* have been taken into account in creating the "September Projections."  (Mot. at 22; *see* Proxy at 42.)  Nor do Plaintiffs allege that either set of disclosed projections fails to "follow generally accepted accounting principles" or was "seriously undermined by undisclosed facts or unreasonable assumptions," as was true in *Hot Topic*.  *Compare* 2014 U.S. Dist. LEXIS 180513, at *15-17 (noting, among other things, assumptions in the disclosed projections regarding slower build out of stores and changes to gross revenues).[6]  Indeed, there are no facts alleged in the Amended Complaint suggesting that the November or December Projections were in any way not representative of management's actual views.

Absent any well-pleaded facts to support Plaintiffs' "premise" that the "September Projections" were "more accurate," there is no basis to infer that the "September Projections" were material information or that the disclosure of the two most recent sets of projections was materially misleading either under the Rule 8(a) standard or the more demanding standards of the PSLRA.  *See Iqbal*, 556 U.S. at 687; *see also* 15 U.S.C. § 78u-4(b)(1); *Assad v.*

---

[6] The *Hot Topic* court also explained that "to recover, a plaintiff must not only allege that the defendants subjectively believed their statements were false, but also that the statements were objectively false."  *Hot Topic*, 2014 U.S. Dist. LEXIS 180513, at *14.  Plaintiffs have not established a basis for either conclusion.  As set forth in the Blount Defendants' Motion, "the undisputed facts support management's views—and the independent directors' determination—that the 'September Projections' were 'no longer current.'"  (Mot. at 21.)

*Mines Mgmt., Inc.*, No. 2:16-cv-00256, 2016 U.S. Dist. LEXIS 119544 at *5-6 (E.D. Wash. Sept. 2, 2016).

At most, the "September Projections" are "*additional* information that was not disclosed that [Plaintiffs] would like to have," which is "plainly inconsistent" with the requirements to state a claim under Section 14(a).  (Mot. at 19-20 (quoting *Assad*, 2016 U.S. Dist. Lexis 119544, at *12) (emphasis in original).)[7]

2.    <u>Plaintiffs Failed to Plead Negligence with Any Particularity</u>.

To state a claim under Section 14(a), Plaintiffs must "plead with particularity facts that give rise to a strong inference of negligence."  *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 682-83 (9th Cir. 2005) (quoting *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000)).  In their Opposition, Plaintiffs again fall back on cherry-picked third-quarter results to suggest that those results discredit the November and December Projections.  (Opp. at 21-22.)  As discussed above and in the Blount Defendants' Motion, Blount's third-quarter results—which were taken into account in the later disclosed projections,

---

[7] Plaintiffs also seem to argue that the disclosure of the two most recent sets of projections constitutes a "partial disclosure."  (Opp. at 16-19.)  The decisions Plaintiffs cite, however, are inapposite.  For example, in *In re Pure Resources, Inc. Shareholders Litigation*, plaintiffs alleged that the 14D-9 did "not disclose *any* substantive portions of the work [of the investment bankers] on behalf of the Special Committee[.]"  808 A.2d 421, 448 (Del. Ch. 2002). The court found that "stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendation of their board as to how to vote on a merger or tender rely."  *Id.* at 449.  The Blount Defendants agree, and did disclose a fair summary of Greenhill's and Goldman's work in the Proxy that Plaintiffs do not challenge.  (*See, e.g.*, Proxy at 61-74); *see also Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1221 (9th Cir. 1980) (granting summary judgment in the absence of "specific evidence" suggesting that disclosure of the projections was "necessary in order to make the statements made . . . not misleading"); *In re MONY Grp. Inc. S'holder Litig.*, 852 A.2d 9, 25-28 (Del. Ch. 2004) (requiring additional disclosures as to change in control agreements, but not financial analyses, for which a "fair summary" is sufficient disclosure, and plaintiff did not allege that the summary presented was unfair).

but not in the "September Projections"—do not support a "strong inference" that the Blount

Defendants "knew or were negligent in not knowing that the Proxy failed to include" any

*material* information (Opp. at 22; *see* Mot. at 24-25).  And comparing the Q3 results with Q2

results, while ignoring all other indicators such as year-over-year comparisons and actual

marketplace developments in Blount's business, certainly does not support a "strong inference"

that the Blount Defendants "knew they had no justification for slashing the undisclosed

September Projections."  (Opp. at 21; *see also* Mot. at 9-10, 22-23 (describing the justification

for revising "September Projections").)[8]

        3.      <u>Plaintiffs Failed to Plead Loss Causation.</u>

        Plaintiffs' arguments in their Opposition regarding loss causation miss the point:

"To recover under § 14(a), private plaintiffs must show . . . 'both economic loss and proximate

causation.'  Shareholders may be damaged if a merger 'resulted in a reduction of the earnings or

earnings potential of their holdings.'"  *In re Hot Topic*, 2014 U.S. Dist. LEXIS at *27 (internal

citations omitted); (*see also* Mot. at 25-27.)  It is axiomatic that "damages should be recoverable

only to the extent that they can be shown."  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 389

---

[8] Plaintiffs' reliance on the cited decisions, in which the plaintiffs successfully pleaded a material misstatement or omission, is misplaced.  (Opp. at 22); *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1301 (2d Cir. 1973) (deciding only that negligence, not scienter, is the appropriate standard); *Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *80 (C.D. Cal. June 17, 2010) (having personally reviewed the proxy containing a material misstatement before dissemination was sufficient to establish negligence); *see also City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*, No. C 07-05111 CW, 2009 U.S. Dist. LEXIS 3339, at *28 (N.D. Cal. April 6, 2009) (members of the audit committee had duties associated with administering the backdated stock options plan, but failed to ensure that the statements describing the options, which were material to the directors' reelection, were truthful); *In re JPMorgan Chase & Co. Secs. Litig.,* MDL No. 1783, C.A. No. 06 C 4674, 2007 U.S. Dist. LEXIS 93877, at *22-23 (N.D. Ill. Dec. 18, 2007) (plaintiff alleged that the directors were in regular contact with Dimon and Harrison and thus "'knew or should have known' about the **no**-premium offer" that was materially omitted from the proxy) (emphasis in original).

(1970); *see also id.* at 386 ("[S]howing that proxies necessary to approval of the merger were obtained by means of a materially misleading solicitation implies nothing about the form of relief to which they might be entitled."). Thus, even if proximate cause is satisfied because the Proxy "was an essential link in the accomplishment of the transaction," Plaintiffs must still plead facts—not conclusions—sufficient to support a reasonable inference that the Proxy resulted in a reduction of their earnings or earnings potential. Plaintiffs here do no such thing.

Plaintiffs plead no facts indicating that they would have demanded or would have been entitled to more than the already-considerable 86% premium offered for their shares. (S*ee* Mot. at 27.)[9] Plaintiffs do not plead that any analyst report or other source suggested a value for Blount's stock above or even near the Merger consideration. Further, Plaintiffs plead no facts suggesting that the multiple valuation analyses disclosed in the Proxy were incorrect. Nor do they allege facts suggesting that those analyses would have differed had the September Projections been disclosed. As discussed above, the disclosed projections were consistent with the "significant" headwinds and year-over-year declines described in several of Blount's public statements, including in the Proxy incorporated into the Amended Complaint. (*See* section I.A.2., *supra*; Mot. at 9-10.) And, reflecting these problems, Blount's stock price plummeted from a high of $17.72 in the first quarter of 2015 to a low of $5.10 in the fourth quarter of 2015. (Mot. at 23 (citing Proxy at 130).) In short, nothing in the Amended Complaint suggests that

_____

[9] *Cf. Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 67 (D. Del. 2002) (alleging that, expecting a merger of equals, "plaintiffs were deceived into forsaking the acquisition premium that plaintiffs would have demanded for their sale of their Chrysler shares in connection with a change in control or complete acquisition of Chrysler").

Plaintiffs would have secured more for their shares had the "September Projections" been disclosed.[10]

Plaintiffs' attempt to portray their allegations as "[n]early identical" to the allegations at issue in *Hot Topic* is without any basis.  (Opp. at 20.)  In *Hot Topic*, the plaintiff claimed "that analysts valued Hot Topic shares at $16.40 per share [compared to the $14.00 per share merger consideration]," and that, because "Hot Topic shares had a book value of $1.40 per common share, the purchase price was actually closer to $12.60 per share."  *In re Hot Topic*, 2014 U.S. Dist. LEXIS, at *28.  The plaintiff also argued that "the assumptions and estimates made in the Revised Projections were contradicted by 'every public statement made by [Hot Topic] and defendant Harper from 1Q2011 through 4Q2012.'"  *Id.* at 6.  The court found that "[w]hen combined with Hot Topic's strong revenue growth and the 46% yearly increase in share price . . . [,] Plaintiff has met the economic harm requirement."  *Id.* at *28.  There are no facts even remotely like this in the Amended Complaint, which in no way suggests that Plaintiffs could have secured greater merger consideration if the "September Projections" had been disclosed.

---

[10] Plaintiffs' Opposition does not address the Blount Defendants' argument that, *at best*, the allegations in the Amended Complaint could support a reasonable inference that—if there was any economic loss suffered, which there was not—it resulted from factors besides the alleged misstatements or omissions, such as timing of the transaction, and is thus not actionable under Section 14(a).  (*See* Mot. at 26; Compl. ¶¶ 5, 69); *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640, 2012 WL 1933559, at *7 (N.D. Cal. May 29, 2012).

III.    **CONCLUSION**

      For the reasons set forth herein and in the Blount Defendants' Motion, the Blount Defendants respectfully request that the Court dismiss the Amended Class Action Allegation Complaint with prejudice.

      DATED this 21st day of November, 2016.

      MILLER NASH GRAHAM & DUNN LLP

      *s/ Joshua M. Sasaki*
      Joshua M. Sasaki, P.C., OSB No. 964182
      E-mail: josh.sasaki@millernash.com
      3400 U.S. Bancorp Tower
      111 S.W. Fifth Avenue
      Portland, Oregon 97204
      Phone: (503) 224-5858
      Fax: (503) 224.0155

      *Attorneys for Defendants Blount International, Inc., Robert E. Beasley, Jr., Ronald Cami, Andrew C. Clarke, Nelda J. Connors, E. Daniel James, Harold E. Layman, Max L. Lukens, and Daniel J. Obringer*

      CRAVATH, SWAINE & MOORE LLP

      *s/ Gary A. Bornstein*
      Gary A. Bornstein *(pro hac vice)*
      NY Bar No. 2916815
      E-mail: GBornstein@cravath.com
      825 Eighth Avenue
      New York, New York 10019
      Phone: (212) 474-1084
      Fax: (212) 474-3700

      *Attorneys for Defendants Blount International, Inc., Andrew C. Clarke, Nelda J. Connors, E. Daniel James, and Harold E. Layman*

DAVIS POLK & WARDWELL

*s/ Lawrence Portnoy*
_____

Lawrence Portnoy *(pro hac vice)*
NY Bar No.: 2312650
E-mail: lawrence.portnoy@davispolk.com
450 Lexington Avenue
New York, New York  10005
Phone (212) 450-4874
Fax (212) 450-5874

*Attorneys for Defendants Robert E. Beasley,
Ronal Cami, Max L. Lukens and Daniel J.
Obringer*

K&L GATES LLP

*s/ B. John Casey*
_____

B. John Casey, OSB No. 120025
E-Mail: john.casey@klgates.com
Adam W. Holbrook, OSB No. 145494
E-Mail: adam.holbrook@klgates.com
One SW Columbia Street
Suite 1900
Portland, OR 97258
Phone: (503) 228-3200
Fax: (503) 248-9085

KIRKLAND & ELLIS LLP

*s/ Nathaniel J. Kritzer*
_____

Jay P. Lefkowitz (admitted *pro hac vice*)
E-Mail: lefkowitz@kirkland.com
Nathaniel J. Kritzer (admitted *pro hac vice*)
E-Mail: nathaniel.kritzer@kirkland.com
601 Lexington Avenue
New York, New York 10022
Phone: (212)-446-4800
Fax: (212)-446-4900

*Attorneys for Defendants Joshua L. Collins and
David A. Willmott*

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true and correct copy of the foregoing Blount

Defendants' Reply Brief in Further Support of Their Motion to Dismiss Plaintiffs' Amended

Class Action Allegation Complaint upon all counsel of record in the above captioned case via the

Court's CM/ECF System.

DATED this 21st day of November, 2016.

<u>s/ Joshua M. Sasaki</u>
Joshua M. Sasaki, P.C., OSB No. 964182
*Attorneys for Defendants Blount*
*International, Inc., Robert E. Beasley, Jr.,*
*Ronald Cami, Andrew C. Clarke, Nelda J.*
*Connors, E. Daniel James, Harold E.*
*Layman, Max L. Lukens, and Daniel J.*
*Obringer*

Page 1 -  Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204