# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ELIA AZAR** and **DEAN ALFANGE**, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>**BLOUNT INTERNATIONAL, INC., JOSHUA L. COLLINS, DAVID A. WILLMOTT, ROBERT E. BEASLEY, JR., RONALD CAMI, ANDREW C. CLARKE, NELDA J. CONNORS, E. DANIEL JAMES, HAROLD E. LAYMAN, MAX L. LUKENS,** and **DANIEL J. OBRINGER**,<br><br>               Defendants. | Case No. 3:16-cv-483-SI<br><br>**OPINION AND ORDER** |

Robert J. McGaughey, MCGAUGHEY ERICKSON, 1500 SW First Avenue, Suite 800, Portland, OR 97223; W. Scott Holleman, JOHNSON & WEAVER LLP, 99 Madison Avenue, Fifth Floor, New York, NY 10016; and Shannon L. Hopkins, LEVI & KORSINSKY LLP, 30 Broad Street, 24th Floor, New York, NY 10004. Lead Counsel for Plaintiffs.

Joshua M. Sasaki and Ian Christy, MILLER NASH GRAHAM & DUNN LLP, 3400 U.S. Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204. Of Attorneys for Defendants Blount International, Inc., Robert E. Beasley, Jr., Ronald Cami, Andrew C. Clarke, Nelda J. Connors, E. Daniel James, Harold E. Layman, Max L. Lukens, and Daniel J. Obringer.

Gary A. Bornstein, CRAVATH, SWAINE & MOORE LLP, 825 Eighth Avenue, New York, NY 10019. Of Attorneys for Defendants Blount International, Inc., Andrew C. Clarke, Nelda J. Connors, E. Daniel James, and Harold E. Layman.

Lawrence J. Portnoy and Rebecca L. Martin, DAVIS POLK & WARDWELL LLP, 450 Lexington Avenue, New York, NY 10017. Of Attorneys for Defendants Robert E. Beasley, Jr., Ronald Cami, Max L. Lukens, and Daniel J. Obringer.

B. John Casey, K&L GATES LLP, One S.W. Columbia Street, Suite 1900, Portland, OR 97258; Jay P. Lefkowitz and Nathaniel J. Kritzer, KIRKLAND & ELLIS LLP, 601 Lexington Avenue, New York, NY 10022. Of Attorneys for Defendants Joshua L. Collins and David A. Willmott.

**Michael H. Simon, District Judge.**

Plaintiffs, former stockholders of Defendant Blount International, Inc. ("Blount" or the "Company"), bring this putative class action lawsuit primarily under § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), seeking to rescind Blount's merger (the "Merger") with American Securities, LLC and P2 Capital Partners LLC (collectively, the "Buyers"). In the alternative, Plaintiffs seek money damages arising out of the Merger. Defendants Blount, Joshua L. Collins, David A. Willmott, Robert E. Beasley Jr., Ronald Cami, Andrew C. Clarke, Nelda J. Connors, E. Daniel James, Harold E. Layman, Max L. Lukens, and Daniel J. Obringer (collectively, "Defendants") have moved to dismiss Plaintiffs' Amended Class Action Allegation Complaint ("Amended Complaint" or "Am. Compl."), under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons that follow, the Court DENIES Defendants' motion.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint

---

[1] Plaintiffs also originally sued in this action ASP Blade Merger Sub Inc., ASP Blade Intermediate Holdings Inc., American Securities LLC, and P2 Capital Partners LLC. These defendants also moved to dismiss (ECF 58), but Plaintiffs have since voluntarily dismissed all claims against them. ECF 60. Accordingly, their motion to dismiss is denied as moot.

and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In addition, as discussed more fully below, under the Private Securities Litigation Reform Act ("PSLRA"), class-action claims under §14(a) must meet heightened pleading standards. 15 U.S.C. § 78u-4(a)(1); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) ("The PSLRA . . . imposes more exacting pleading requirements . . . ." (quotation marks omitted)).

## BACKGROUND

Blount is a Delaware corporation that manufactures and markets replacement parts, equipment, and accessories for consumers and professionals in the forestry, lawn and garden, farm, ranch, agriculture, and construction industries. Am. Compl. ¶¶ 2, 17. Before the Merger,

Defendants Collins and Willmott were the Chief Executive Officer and Chief Operating Officer of Blount, respectively. *Id.* ¶ 18. Blount's Board of Directors (the "Board") consisted of ten members: Collins, Willmott, and eight independent directors, Defendants Beasley, Cami, Clarke, Connors, James, Layman, Lukens, and Obringer. *Id.* ¶¶ 20-28. At all relevant times, Plaintiffs were Blount stockholders. *Id.* ¶¶ 1, 16.

P2 Capital Partners LLC ("P2") approached Collins in early 2015 about partnering with another investor to acquire the Company and take it private. *Id.* ¶ 3. P2 eventually teamed with American Securities, LLC ("American Securities") and worked with Collins and Willmott to effect that purchase and sale. *Id.*

On August 6, 2015, the Buyers submitted an informal indicative proposal to acquire the Company at a price range of $11.00 to $12.50 per share, and stated that they intended to retain Collins and Willmott as managers. *Id.* ¶ 42. Plaintiffs allege that Collins and Willmott thus were conflicted because of this potential post-transaction employment, giving them an interest in the Merger separate from those of other Blount shareholders. *Id.* ¶¶ 42-43. Despite this alleged conflict, Collins and Willmott worked with the Buyers to close the deal to sell the Company. *Id.* ¶ 43.

On September 9, 2015, because the Buyers wanted to retain Company management, the Board formed a "Special Committee" to negotiate, evaluate, and provide recommendations to the Board regarding any acquisition proposals. Portnoy Decl. ¶ 2, Ex. A, "Blount International Inc.'s Definitive Proxy Statement" ("Proxy") at 35, ECF 57-1.[2]

---

[2] As a general rule, a court may not consider material beyond the pleadings in ruling on a motion under Fed. R. Civ. P. 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). A court, however, may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document, (2) the document is central to the plaintiff's claim, and (3) no party questions the authenticity of the copy attached to the Rule 12(b)(6) motion. *Daniels-*

In the process leading to the Merger, Blount's management created certain sets of financial projections, generated as early as September 2015, which Plaintiffs refer to as the "September Projections." Am. Compl. ¶¶ 55, 58 & n.2. These projections "forecasted the Company's financial performance for several years into the future" and "purportedly exhibited management's expectations regarding Blount's future financial performance." *Id.* ¶¶ 8, 55.

On September 9, 2015, the Board met to discuss the Buyers' offer. *Id.* ¶¶ 58, 59. Goldman, Sachs & Co. ("Goldman Sachs"), one of the Board's financial advisors, attended the meeting and presented to the Board preliminary financial analyses of the Merger; Goldman Sachs used the September Projections in performing these analyses. *Id.* ¶¶ 8, 58, 59. Plaintiffs allege that Goldman Sachs also was conflicted, due to its previous ties to American Securities and P2. *Id.* ¶¶ 73-87. On October 8, 2015, the Buyers submitted a non-binding indication of interest to acquire the Company for between $8.25 and $8.50 per share, which the Special Committee rejected the next day. Proxy at 37.

On October 12, 2015, the Buyers submitted a revised proposal of $9.75 to $10.00 per share. *Id.* With this higher price on the table, the Special Committee obtained its own financial advisor, Greenhill & Co. ("Greenhill"), and own legal advisors. *Id.* at 38-40. Goldman Sachs continued to advise the Special Committee. *Id.* at 38. During negotiations, the Buyers' indicative price range rose as high as $10.55 to $10.80 per share. *Id.* at 41.

On October 15, 2015, the independent members of the Board held an executive session, with Goldman Sachs attending. Am. Compl. ¶ 58. Blount management (specifically, Collins and

---

*Hall*, 629 F.3d at 998. The court "may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quotation marks omitted). Because the Amended Complaint relies on the Proxy (*see, e.g.*, Am. Compl. ¶¶ 10-12, 48, 53, 55-72), the Court will consider it in ruling on Defendants' motion to dismiss.

Willmott) previously had told Goldman Sachs that the September Projections "were no longer current" and that management would need to revise the projections downward. *Id.* ¶ 60. In response, Goldman Sachs told the Board at the October 15, 2015 meeting of the need for downward revisions to the projections. *Id.* ¶¶ 60-61. According to Plaintiffs, "[i]nstead of inquiring directly with Blount's management, the Board relied upon Goldman Sachs' questionable hearsay and decided that management should prepare updated financial projections." *Id.* ¶ 62.

Blount's management (Collins and Willmott) subsequently created new financial projections for the years 2015 through 2020, which significantly downgraded the Company's financial outlook. *Id.* ¶ 9. These projections, created in November and December 2015, are the "November Projections" and "December Projections," respectively. *Id.* Management allegedly created these more pessimistic projections in order to support a reduced per-share merger price. *Id.* Plaintiffs allege that the September Projections more accurately reflected Blount's short- and long-term prospects than did later projections, and that the November and December Projections were misleading as to management's true views of the Company's prospects. *Id.* ¶ 10.

On November 9, 2015, Blount reported financial results from third quarter 2015. *Id.* ¶ 65. These results showed gains across several key metrics from second quarter 2015. *Id.* ¶ 66. The Company "did not publicize any information that would warrant slashing its financial projections," i.e., revising downward the September Projections. *Id.* ¶ 65. The Proxy stated that in October 2015, management had told the Buyers that it "anticipated improved third quarter results and provided greater certainty that the Company would meet year-end targets as compared with the preliminary reports provided to the [Buyers] prior to October 8, 2015." *Id.* ¶ 67 (quoting Proxy at 37). Plaintiffs allege that "[t]hese statements belie the notion that Blount

needed to reduce its 5-year financial projections based on any objective measure of the Company's financial performance." *Id.* ¶ 68.

On December 4, 2015, the Buyers reduced their proposed purchase price to $9.85 per share. Proxy at 46. The Special Committee countered at $10.30 per share. *Id.* at 47. The Buyers then countered with a "best and final offer" of $10.00 per share on December 7, 2015. *Id.* On December 10, 2015, "following months of negotiations led by Collins and Willmott with minimal Board involvement, Blount announced that it had entered into an Agreement and Plan of Merger," by which P2 and American Securities would acquire all outstanding shares of Blount common stock for $10.00 per share. Am. Compl. ¶ 4.

Plaintiffs allege that the $10.00 per share was a "fire sale price" that benefited Collins and Willmott at Blount shareholders' expense. *Id.* ¶¶ 69, 72. Goldman Sachs and Greenhill had rendered a fairness opinion based on the more pessimistic projections that recommended the "materially inadequate" $10.00 per share price to shareholders. *Id.* ¶ 71. "Blount stockholders should have been given the earlier set(s) of financial projections in order to gain an accurate view of the Company's prospects, and the failure to disclose such information rendered the Proxy Statement materially misleading and inadequate." *Id.* ¶ 72.

On January 12, 2016, Blount filed a preliminary proxy statement with the Securities and Exchange Commission ("SEC"); on February 16, 2016, Blount filed an amended preliminary proxy statement with additional disclosures. *See* Portnoy Decl. ¶ 3, Ex. B, ECF 57-2. On March 9, 2016, Blount filed its Definitive Proxy Statement with the SEC. Am. Compl. ¶ 6. On April 7, 2016, a majority of Blount's shares of common stock were voted in favor of the Merger; on April 12, 2106, the Merger was completed. *Id.*

PAGE 7 – OPINION AND ORDER

**DISCUSSION**

**A.  Defendants' Arguments Against Plaintiffs' Claim Under Section 14(a)**

Section 14(a) of the Securities Exchange Act and SEC Rule 14a-9 "disallow the solicitation of a proxy by a statement that contains either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000); *see also* 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a). "To state a claim under § 14(a) and Rule 14a-9, a plaintiff must establish that '(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.'" *N.Y.C. Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) (quoting *Tracinda Corp v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007)), *overruled on other grounds by Lacey v. Maricopa County,* 693 F.3d 896 (9th Cir. 2012) (en banc).

The PSLRA requires a plaintiff to (1) "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is made," 15 U.S.C. § 78u-4(b)(1)(B); (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," *id.* § 78u-4(b)(2)(A); and (3) establish that "the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages," *id.* § 78u-4(b)(4), that is, plead "loss causation," *Stoneridge Inv. Partners v. Sci.-Atlanta*, 552 U.S. 148, 165 (2008).

In their motion to dismiss, Defendants present three primary arguments against Plaintiffs' claim under Section 14(a). First. Defendants argue that Plaintiffs have not alleged sufficient facts to establish that the omission of the September Projections in lieu of the November and

PAGE 8 – OPINION AND ORDER

December Projections was materially misleading. Second, Defendants assert that the Amended

Complaint fails to allege with particularity facts giving rise to a strong inference of negligence.

Finally, Defendants maintain that the Amended Complaint fails sufficiently to allege loss

causation.

### 1.  Material Misrepresentations and Omissions

"An omitted fact is material if there is a substantial likelihood that a reasonable

shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway,*

*Inc.*, 426 U.S. 438, 449 (1976). Materiality

> does not require proof of a substantial likelihood that disclosure of
> the omitted fact would have caused the reasonable investor to
> change his vote. What the standard does contemplate is a showing
> of a substantial likelihood that, under all the circumstances, the
> omitted fact would have assumed actual significance in the
> deliberations of the reasonable shareholder. Put another way, there
> must be a substantial likelihood that the disclosure of the omitted
> fact would have been viewed by the reasonable investor as having
> significantly altered the "total mix" of information made available.

*Id.*; *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 384 (1970) ("Where the misstatement or

omission in a proxy statement has been shown to be 'material,' . . . that determination itself

indubitably embodies a conclusion that the defect was of such a character that it might have been

considered important by a reasonable shareholder who was in the process of deciding how to

vote.").

Plaintiffs have sufficiently alleged that the Proxy's omission of the September

Projections and the inclusion instead of the allegedly watered-down November and December

Projections were misleading. They have also stated the facts on which these allegations are

based. Specifically, Plaintiffs allege that "the September Projections more accurately reflected

Blount's short- and long-term prospects" than did the November and December Projections. Am.

Compl. ¶ 10. Plaintiffs allege that the later projections were less accurate, and support this

allegation with Company's performance and financial metrics, which indicated an optimistic forecast for the Company. These metrics include increased growth from second quarter to third quarter 2015 in operating income, EBITDA,[3] and net income. Am. Compl. ¶¶ 65-66. Additionally, the Proxy reported that, in October 2015, management told the Buyers that it "anticipated improved third quarter results and provided greater certainty that the Company would meet year-end targets as compared with the preliminary reports provided to the [Buyers] prior to October 8, 2015." *Id.* ¶ 67 (quoting Proxy at 37). Plaintiffs also allege that the Company did not publicize any information during this period that would warrant adjusting financial projections downward. *Id.* ¶ 65. These positive financial indicators provide sufficient, specific reasons to support the allegation that the more optimistic September Projections were more accurate than the more pessimistic November and December Projections.

Plaintiffs assert additional allegations that further support the inference that the September Projections were more accurate than later projections and that the November and December projections were manipulated to provide a more bleak forecast of the Company's performance. It was Company management, specifically the allegedly conflicted Collins and Willmott, who initially stated that the September Projections were no longer current, and the also allegedly conflicted Goldman Sachs who relayed their recommendations to create new projections to the Board. *Id.* ¶¶ 61-62. The Board, in acquiescing and having management create new projections, relied on the "questionable hearsay" of Goldman Sachs. *Id.* ¶ 62. Although these conflicts might not be sufficient on their own to raise an inference that the September Projections were more accurate and that inclusion of only the November and December Projects

---

[3] Earnings before interest, tax, depreciation and amortization; "an earnings measure that is typically considered a good example of a company's cash income and ability to service debt." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 234 (2d Cir. 2016) (alteration omitted) (quotation marks omitted).

was misleading, they add support to the allegation of a misleading omission in conjunction with Plaintiffs' other factual allegations.

Plaintiffs also have sufficiently alleged that the omission of the September Projections and inclusion of only the November and December Projections were material. Reasonable shareholders would want to see, and would rely on in assessing the "total mix" of information, the most accurate set of financial projections in deciding whether to approve a merger. Am. Compl. ¶¶ 69-72. According to Plaintiffs, Goldman Sachs and Greenhill performed discounted cash flow ("DCF") analyses based on the downgraded, and less accurate, later financial projections. *Id.* ¶ 69. Goldman Sachs and Greenhill also rendered a fairness opinion recommending the price of $10.00 per share to shareholders based the lowered financial projections. *Id.* ¶ 71.

Numerous cases discuss the importance of financial projections and cash flow analyses to shareholders. *See, e.g.*, *United States v. Smith*, 155 F.3d 1051, 1064 n.20 (9th Cir. 1998) ("[I]nvestors are concerned, perhaps above all else, with the future cash flows of the companies in which they invest."); *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968) ("[M]aterial facts include not only information disclosing the earnings and distributions of a company but also those facts which affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities."); *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007) ("[P]rojections . . . are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or . . . market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects."); *Doft & Co. v. Travelocity.com Inc.*, 2004 WL 1152338, at *5 (Del. Ch. May 20, 2004) (observing that five-year projections "are

shown to be reasonably reliable and are useful in later performing a DCF analysis"); *In re Emerging Commc'ns, Inc. S'holders Litig.*, 2004 WL 1305745, at *37 (Del. Ch. May 3, 2004) (holding that omissions of later projections "were highly material because knowledge [thereof] would have enabled the shareholders to understand [the company's] intrinsic worth and the extent of the market's undervaluation of their company"). The established case law shows the importance (and, hence, materiality) of financial projections to shareholders' decision-making. This supports the inference in favor of Plaintiffs that the omission of the allegedly more accurate September Projections was material, as was their replacement by the November and December Projections.

Defendants argue that the September Projections were not material because they were out-of-date or "stale" and that courts have found similar out-of-date projections immaterial when more current projections were disclosed. *See, e.g.*, *Netsmart Techs.*, 924 A.2d at 200-01 (holding that non-disclosure of earlier, more pessimistic projections was not material in light of disclosure of later, more bullish projections); *David P. Simonetti Rollover IRA v. Margolis*, 2008 WL 5048692, at *10 (Del. Ch. June 27, 2008) (holding that non-disclosure of more optimistic projections was not material where record established that the disclosed projections "reflected management's best estimates at the time"). Defendants further argue that the Amended Complaint only contains only conclusory allegations describing why the September Projections were more accurate, why inclusion of only the November and December Projections was misleading, and why this was material.

Contrary to Defendants' arguments, Plaintiffs have sufficiently alleged at the pleading stage why the September Projections were not stale, and in fact were more accurate than the November and December Projections, and thus why they were material: a reasonable shareholder

would want to know management's most optimistic projections when assessing the fairness of the Merger stock price and would question the reduction in financial outlook that the November and December projections presented. Plaintiffs' allegation that the September Projections were more accurate than the November and December Projections is not a conclusory allegation akin to a bare allegation of an element of a claim. Plaintiffs have not merely alleged, for example, that the Proxy Statement contained material omissions (which would be a conclusory allegation). Instead, Plaintiffs allege that the Proxy Statement was incomplete for failing to contain a specific set of projections that would have provided a more accurate picture of the Company's performance and of management's forecasts. Such a factual assertion can later be proven or disproven on summary judgment or at trial, but it is not conclusory. Moreover, Plaintiffs have alleged additional facts (e.g., the quarter-to-quarter performance increases and the conflicted parties' motivation to water down the Company's share price) to support the factual allegations regarding the September Projections' superior accuracy, thus providing the specificity the PSLRA requires. Although Defendants may later attempt to prove that the November and December Projections were, in fact, more accurate and reliable than the September Projections and that Plaintiffs' factual allegations are, therefore, without merit, at this stage of the litigation Plaintiffs' allegations regarding the projections suffice.

Defendants also argue that Plaintiffs have "cherry-picked" financial data in arguing that the Company's financial prospects were improving. Defendants argue that a more complete picture of the Company's finances, as the Proxy presents, justifies the more pessimistic outlook of the November and December Projections and shows them to be more accurate than the September Projections. For instance, Defendants argue that the November and December Projections, but not the September Projections, take into account the Company's actual results

from third quarter 2015 and the Company's 2016 budget proposal. Proxy at 60-61. Defendants

point to decreases from third quarter 2014 to third quarter 2015 in the Company's sales,

operating income, consolidated adjusted EBITDA, and net income, *id.* at 43, as well as a

decrease in the stock price from a high of $17.72 in first quarter 2015 to $5.10 in fourth

quarter 2015, *id.* at 130. These arguments, however, amount only to a factual dispute with

Plaintiffs' allegations, which do not affect the legal sufficiency of the pleadings. At this stage of

the lawsuit, the Court must assume that Plaintiffs' well-pleaded factual allegations are true.

These allegations support Plaintiffs' claim that the September Projections—despite Defendants'

purported evidence and arguments to the contrary—are more accurate and reliable than the

November and December Projections. Defendants' may argue their factual disagreements later.[4]

In disputing whether the Proxy contained any material, misleading statements or

omissions, the parties each rely on Judge Otero's decision in *In re Hot Topic, Inc. Securities

Litigation*, 2014 WL 7499375 (C.D. Cal. May 2, 2014). Although *Hot Topic* might be read to

lend some support to each side, it ultimately further confirms that Plaintiffs have met their

burden in pleading a misleading, material omission in accordance with the PSLRA.

In *Hot Topic*, the plaintiff challenged a private equity firm's acquisition of retailer Hot

Topic. *Id.* at *1. Hot Topic had begun "a plan to revitalize the company," and its financial

condition significantly improved. *Id.* at *2. It prepared the "LRP Projections" (long-range plan)

projections in early 2012, which reflected this financial success. *Id.* The plaintiffs alleged that

certain director defendants, in cooperation with a Hot Topic financial advisor, realized that the

---

[4] Defendants' argument that adverse market conditions—and not any scheme by a
conflicted management to manipulate the stock price and close the Merger—account for the
more pessimistic November and December Projections, and that those market conditions also
make the September Projections stale and less accurate (which argument is discussed further
with regard to loss causation, below) similarly reduces to a factual dispute inappropriate for
resolution on a motion to dismiss.

optimistic LRP Projections "'would be problematic in any change-of-control situation,'" and so created a later, second set of projections (the "Revised Projections") "that would 'give the illusion that the Merger was fair from a financial perspective to Hot Topic's public shareholders,'" *id.* (quoting complaint). The more pessimistic Revised Projections assumed slower build-out of new stores, more moderate growth of outlet stores, and reduced growth of subsidiary retail chains. *Id.* The Revised Projections, however, "were contradicted by 'every public statement made by'" Hot Topic. *Id.* (quoting complaint). The plaintiffs alleged that the defendants provided the buyers with the earlier, more bullish LRP Projections, but directed its financial advisors to use the later, more pessimistic Revised Projections in creating a fairness opinion for Hot Topic shareholders. *Id.* The proxy statement included the LRP Projections *and* the Revised Projections, but described the Revised Projections as "'better reflect[ing] what management believed the Company would be able to achieve during the next five years compared to the LRP Projections.'" *Id.* at *3 (alteration in original) (quoting complaint). The proxy statement also included the fairness opinion based on the Revised Projections. *Id.* Plaintiffs additionally alleged that the individual defendants "received special benefits for their role in the Merger." *Id.*

The *Hot Topic* court held, on a motion to dismiss, that the plaintiffs had adequately alleged a claim under § 14(a) against the relevant defendants. The plaintiffs had plausibly alleged that it was misleading for the defendants to state in the proxy statement that the Revised Projections more accurately reflected the board's judgment about the company's prospects and that it was a misleading omission for Hot Topic not to fully disclose the LRP Projections in the proxy statement. *Id.* at *5-10. The board believed in and relied on the LRP Projections, but presented the Revised Projections as more accurately reflecting Hot Topic's future value. *Id.*

at *5. The plaintiffs identified "many flawed and inaccurate assumptions" that tainted the

Revised Projections. *Id.* at *6. Thus, the plaintiffs had alleged enough facts to support and make

plausible the claim that the Hot Topic board moderated its projections downward to undervalue

its stock. *Id.* The court also held that the misleading projections and omission of the complete

LRP Projections were material:

> Which of two projections is more accurate would be important to a
> reasonable shareholder trying to determine if a stock buyout is a
> fair deal, especially if, as alleged here, the long-term prospects of
> the company differ significantly between the two projections. . . .
> This [emphasis on the later-created projections] was allegedly
> designed to mislead shareholders into weighing the [later, more
> pessimistic] Projections more heavily than the [earlier, more
> optimistic] Projections, which could cause them to undervalue
> their stock. A reasonable shareholder would find the relative
> accuracy and achievability of the two projections helpful.

*Id.* at *8. "'[T]he shareowner faced with a proxy request will think it important to know the

directors' beliefs about the course they recommend and their specific reasons for urging the

stockholders to embrace it.'" *Id.* (quoting *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1091

(1991)).

Here, Defendants correctly argue that the *Hot Topic* plaintiffs presented a great deal of

factual allegations as to why the earlier, more optimistic LRP Projections were more accurate

than the Revised Projections. The *Hot Topic* plaintiffs cited the company's overall growth over a

number of years, identified numerous flawed methodological assumptions underlying the

Revised Projections, and alleged that the Revised Projections contradicted every public statement

the company made about its successful growth, among other things. *Id.* at *2-9. Defendants

argue that Plaintiffs here present far fewer factual allegations, and thus have not met their burden

under the PSLRA. Even assuming, however, that the *Hot Topic* plaintiffs offered more factual

allegations than do Plaintiffs here (which the Court does not, and need not, decide), Defendants

err in assuming (or implicitly arguing) that the degree of the *Hot Topic* factual allegations represents a floor or minimum as to the amount of factual support needed plausibly to state a claim under § 14(a). Nothing in Judge Otero's order suggests that the *Hot Topic* plaintiffs pled the bare minimum to survive a motion to dismiss, and the Court does not read that case that way. Rather, the Court understands *Hot Topic* to represent one way to satisfy a plaintiff's burden on a motion to dismiss, and for the reasons stated above, the Court here holds that Plaintiffs similarly have met their burden in pleading a claim under § 14(a).

Further, Plaintiffs have the better argument that the extensive similarities between *Hot Topic* and the instant case support why they have sufficiently, and plausibly, stated a claim under § 14(a). In both cases, Plaintiffs here and the plaintiffs in *Hot Topic* allege that improperly-motivated management defendants worked with financial advisors to create more pessimistic financial projections to present to shareholders to justify a merger, while themselves relying on an older but allegedly more optimistic and more accurate set of projections. Plaintiffs here identify various financial metrics to support their allegations why the older projections were more accurate.

The *Hot Topic* court found that inclusion of both sets of projections in the proxy statement, with statements representing that the later projections were more accurate, was materially misleading. Plaintiffs' allegations here are comparatively more compelling because the September Projections (unlike the LRP Projections in *Hot Topic*) were not even included in the Proxy statement, even though the Proxy did generally refer to them. Defendants' omission here arguably is more glaring. Thus, as in *Hot Topic*, "it is at least plausible that Defendants' changes to [Blount's] financial projections resulted in a less accurate forecast." *Id.* at *6. Plaintiffs have adequately alleged that the omission of the September Projections, and inclusion

of only the November and December Projections, in the Proxy was materially misleading and have done so with the requisite factual support.

### 2. Negligence

The requisite level of culpability, or mental state, for a claim under § 14(a) is negligence. *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 682-83 (9th Cir. 2005); *Belova v. Sharp*, 2008 WL 700961, at *7 (D. Or. Mar. 13, 2008). Under the PSLRA, "a Section 14(a) plaintiff must plead with particularity facts that give rise to a strong inference of negligence." *Knollenberg*, 152 F. App'x at 683 (quoting *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000)); *see also* 15 U.S.C. § 87u-4(b)(2)(A) ("[I]n any private action arising under this chapter . . . the complaint shall, with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.").

Plaintiffs allege that Defendants, "[b]y virtue of their positions within the Company," were aware that the Proxy was misleading because it omitted the September Projections. Am. Compl. ¶¶ 90-91. Defendants "prepared, reviewed, and/or disseminated" the Proxy. *Id.* ¶ 91. Further, with regard to Defendants Collins and Willmott, Plaintiffs allege that they knowingly caused the creation of the misleading November and December Projections. *Id.* ¶ 9.

Plaintiffs also allege that Defendants improperly deferred to Willmott and Collins, whom they knew to be conflicted, regarding the creation of the November and December Projections, and had the also-conflicted Goldman Sachs prepare financial analyses using the December Projections. *Id.* This is adequate to allege that Defendants were negligent in omitting the September Projections from, and including the November and December Projections in, the Proxy. *See City of Westland Police & Fire Ret. Sys. v. Sonic Sols.*, 2009 WL 942182, at *10 (N.D. Cal. Apr. 6, 2009) (holding that plaintiffs' allegations created a strong inference of

PAGE 18 – OPINION AND ORDER

negligence with regard to a backdating scheme where defendants' duties involved "administering and accounting the stock option plans, granting the stock options and approving [defendant's] financial reports and proxy statements," and where defendants were "responsible for ensuring that [defendant's] public statements describing and accounting for these options were truthful and accurate" (citations omitted)); *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1015-16 (N.D. Cal. 2007) (holding that plaintiffs had sufficiently alleged negligence concerning stock backdating as to manager defendants who had the authority to administer stock options plans and ensure compliance with them, and as to other defendants, who were "charged with ensuring compliance with accounting standards and making certain that [defendant's] financial statements and proxy statements were correct and accurate," because even if they did not know backdating was occurring, they "shirked their duties"); *In re JPMorgan Chase & Co. Sec. Litig.*, 2007 WL 4531794, at *8 (N.D. Ill. Dec. 18, 2007) (holding that plaintiffs had sufficiently alleged negligence because defendants, "as directors, had the opportunity and obligation to monitor and inquire into the details of . . . negotiations" underlying material omission from proxy statement).

  Moreover, materiality is related to negligence:

> "As a matter of law, the preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact is sufficient to satisfy the *Gerstle* [*v. Gamble-Skogmo, Inc.*, 478 F.2d 1281 (2d Cir. 1973)] negligence standard." Accordingly, a director may be found negligent under Section 14(a) for a failure to notice material omissions upon reading a proxy statement.
>
> Here, each of the Defendants has declared that he was involved in the process of preparing, reviewing, and disseminating the Proxy Statement to . . . shareholders.

*Brown v. Brewer*, 2010 WL 2472182, at *24-25 (C.D. Cal. June 17, 2010) (citations omitted)

(quotation marks omitted) (quoting *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 995 (2d

Cir. 1988)). The *Brown* court thus found negligence sufficiently alleged. As in *Brown*, the Amended Complaint here sufficiently alleges that the Proxy was materially misleading because it omitted the September Projections and also alleges that Defendants prepared, reviewed, or disseminated the Proxy. It sufficiently alleges, with particularly, a strong inference of negligence.

Defendants argue that Plaintiffs have not pleaded negligence with sufficient particularity because Plaintiffs purportedly rely on "wholly conclusory allegations." As discussed above, however, Plaintiffs' allegations are not conclusory. Plaintiffs do not allege, for example, merely that Defendants negligently omitted the September Projections from the Proxy. Rather, Plaintiffs plead the nature of Defendants' involvement in preparing or reviewing the Proxy. They plead Defendants' management roles within the Company. And they plead Defendants' improper reliance on the allegedly conflicted Willmott, Collins, and Goldman Sachs. These constitute specific factual allegations that Defendants may attempt to disprove on summary judgment or at trial. They are not, however, mere legal conclusions. Under the well-established case law cited above, they suffice to plead negligence under the PSLRA.

Plaintiffs also have set forth greater factual material than was alleged in the case Defendants rely on, *McKesson HBOC*, where the plaintiffs pleaded only that "defendants 'acted negligently and without due care in distributing, or causing to be distributed, the Joint Proxy Statement containing the false and misleading statements omissions.'" 126 F. Supp. 2d at 1267 (quoting complaint). The particular facts alleged here go well beyond the inadequate and properly-labeled conclusory assertions discussed and rejected in *McKesson HBOC*. Thus, Plaintiffs have adequately alleged with sufficient particularly facts that give rise to a strong inference of Defendants' negligence.

### 3.  Loss Causation

Defendants also argue that Plaintiffs have not alleged the causation required of a claim under § 14(a), namely "loss causation." This requires that plaintiff investors "demonstrate that the defendant's deceptive conduct caused their claimed economic loss." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 807 (2011); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (defining "loss causation" as "a causal connection between the material misrepresentation and the loss"). "To show loss causation, a plaintiff must prove both economic loss and proximate causation. In well-pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm." *Jobs*, 593 F.3d at 1023 (citations omitted); *see also id.* (requiring a complaint, to plead loss causation, to "'provide the defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation'" (alteration omitted) (quoting *Dura Pharm.*, 544 U.S. at 347)).

Plaintiffs have sufficiently pleaded both elements of loss causation. Plaintiffs adequately plead proximate causation when they allege that the Proxy "was an essential link in the accomplishment of the transaction." *Mills*, 396 U.S. at 385.

> Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.

*Id.* Plaintiffs allege that the omission of September Projections from the Proxy "depriv[ed] Blount stockholders of their legal entitlement to receive any and all material information before having to cast a vote on the" Merger, Am. Compl. ¶ 54, and that this omission "imping[ed] on corporate suffrage and preclud[ed] Blount stockholders from casting an informed vote on the" Merger, *id.* ¶ 7. "Had the September Projections been disclosed, stockholders would have

realized that the [Merger] sold short the Company's potential and, thus, was not in the best interests of Blount stockholders." *Id.* ¶ 11. These allegations suffice to plead proximate causation: the Proxy was an "essential link" in accomplishing the Merger, and stockholders relied upon them in approving the Merger. The *Hot Topic* court similarly found that the plaintiff had sufficiently alleged proximate causation on similar allegations:

> Plaintiff alleges that the Proxy Statement makes a series of misrepresentations and omissions that misled shareholders into believing that $14.00 per share was a fair transaction. Plaintiff sufficiently connects the alleged misstatements and omissions in the Proxy Statement with its economic loss. Thus, Plaintiff's allegations satisfy the loss causation requirement.

2014 WL 7499375, at *11 (citations omitted).

Plaintiffs also sufficiently plead economic loss. They allege that the Company's intrinsic value exceeded the $10.00 per share price offered in the Merger. Am. Compl. ¶¶ 71-72. In pleading that the Company was worth more than $10.00 per share, Plaintiffs rely on the allegation that the September Projections provided a more optimistic and more accurate assessment of the Company's financial prospects than did the November and December Projections. *Id.* ¶¶ 10-11, 55-60, 71-72. Plaintiffs also rely on the Company's growth in 2015, management's statements that they expected the Company's performance to improve, and management's affirmance of 2015 year-end targets. *Id.* ¶¶ 65-67. These factual allegations plausibly imply that the Company was worth more than $10.00 per share because only through their materially misleading omission from the Proxy did the per share price of $10.00 appear sufficient to shareholders. Although Plaintiffs do not plead a precise figure at which the Company's stock should have been valued,[5] the allegations that Plaintiffs set forth suffice to

---

[5] Defendants imply that a claim of economic loss based on undervalued stock requires a precise allegation of the purportedly "correct" stock price. Defendants, however, cite no legal authority for this proposition. Further, although the *Hot Topic* plaintiffs alleged what analysts

make plausible the claim that the Company's stock was worth more than $10.00 per share and, therefore, that shareholders in receiving inadequate compensation suffered economic loss. *See Mills*, 396 U.S. at 389 (holding that shareholders may be suffer loss if "if the merger resulted in a reduction of the earnings or earnings potential of their holdings"); *Hot Topic*, 2014 WL 7499375, at *10 ("When combined with Hot Topic's strong revenue growth and the 46% yearly increase in share price, Plaintiff argues that this information shows that the true value of Hot Topic's stock was greater than $14.00 per share, not less. Thus, because Plaintiff has sufficiently alleged that the Merger harmed the earning potential of its Hot Topic shares, Plaintiff has met the economic harm requirement." (citation omitted)); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 231 (S.D.N.Y. 2004) ("[A] plaintiff satisfies [§] 14(a)'s loss causation requirement by demonstrating that 'defendant's misrepresentations induced a disparity between the transaction price and the true 'investment quality' of the securities at the time of the transaction.'" (quoting Suez *Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001))).

Defendants advance two arguments why Plaintiffs' allegations are insufficient to plead loss causation, but these arguments are unavailing. First, Defendants argue that the timing of the Merger—at an "inopportune time" during the "cyclicality of the Company's business," Am. Compl. ¶ 5—not the Proxy's omissions, was responsible for any alleged economic loss. At best this is a possible alternative explanation for any or some decrease in or undervaluation of stock price. At summary judgment or at trial, Defendants may present evidence in support of this

---

allegedly established as a correct stock price, in excess of the price paid in the merger, 2014 WL 7499375, at *10, this does not establish a rule that such an exact pleading is *required*, only that it may be sufficient. Plaintiffs here plead sufficient factual material to make plausible the claim that Blount stock was worth more than $10.00 per share. They do not need to plead precisely what was that higher value.

alternative theory of causation, but at the pleading stage Plaintiffs' causal allegations suffice. The Amended Complaint's single reference to larger market forces does not create an inevitable inference that it could only have been the Merger's timing that caused any economic loss and does not make Plaintiffs' theory of causation implausible as a matter of law. The allegations here are thus unlike those in *Krieger v. Atheros Communications, Inc.*, on which Defendants rely, where the complaint contained such specific and detailed factual allegations regarding the poor timing of the merger and the economic problems facing the acquired company that the only reasonable inference supported by the complaint was that these alternative factors, and not any misstatement or omission in the proxy statement, caused the alleged loss. 2012 WL 1933559, at *7 (N.D. Cal. May 29, 2012). By contrast with *Krieger*, Defendant's alternative causal story relies on one paragraph in the Amended Complaint, in the face of numerous competing allegations supporting Plaintiffs' theory of economic loss.

Second, Defendants argue that the Blount stock could not have been undervalued because the price of $10.00 per share was an 86 percent premium over the stock's closing price the day before the Merger announcement, an 82 percent premium over the stock's 30-day average closing price, and a 68 percent premium over its 90-day average closing price. Proxy at 51. The Special Committee similarly stated in the Proxy that "the trading price of the Company's common stock would be unlikely in the foreseeable future to reach and sustain at least the per share merger consideration of $10.00 . . . ." *Id.* This argument as well amounts to another factual dispute not properly addressed on a motion to dismiss. Even if the $10.00 per share price exceeded the stock's trading value, Plaintiffs have sufficiently and plausibly alleged, for the reasons discussed above, that the $10.00 share price was insufficient in comparison to the stock's true value. Thus, at the pleading stage, Plaintiffs have sufficiently pleaded that the price

PAGE 24 – OPINION AND ORDER

of $10.00 per share undervalued the stock, even if that amount exceeded the most recent trading prices. If the price of $10.00 per share was an 86 percent premium over the stock's closing price on the day of the Merger, then the implication is that a fair price to shareholders (were there no materially misleading omissions in the Proxy) should have been an even greater premium over the closing price.

The defendants in *Hot Topic* raised a similar argument based on the stock's buyout price as a premium over the stock's closing price, which the court similarly rejected. The court stated that "Plaintiff's claims rest on its allegation that 'the Merger Consideration was actually a discount to Hot Topic's enterprise value and intrinsic value,'" 2014 WL 7499375, at *10 (quoting complaint), and so was a discount even if it was a premium on the stock's closing price, because the share price in the merger should have been greater. Thus, Plaintiffs here have adequately pleaded both proximate causation and economic loss. Accordingly, they have adequately pleaded loss causation.

**B.  Defendants' Arguments Against Plaintiffs' Other Claims**

Defendants also argue that because Plaintiffs' primary-liability claim under § 14(a) should fail, Plaintiffs' claim under § 20(a) for control-person liability and Plaintiffs' claim for aiding and abetting liability similarly should fail. Defendants assert no independent arguments in support of dismissing those claims. Because the Court determines that Plaintiffs have adequately pleaded a claim under § 14(a), Defendants' arguments against Plaintiffs' § 20(a) and aiding and abetting claims similarly are not persuasive at this stage of the litigation.

## CONCLUSION

Plaintiffs have satisfied the requirements of the PSLRA and adequately alleged materially misleading representations and omissions contained in the Proxy statement, Defendants' negligence, and resulting loss causation. Thus, Plaintiffs have sufficiently stated a claim for a

violation of § 14(a) of the Securities Exchange Act. Defendants' motion to dismiss (ECF 56) is therefore DENIED. In addition, the motion to dismiss (ECF 58) brought by other defendants who since have been voluntarily dismissed from this action by Plaintiffs is denied as moot.

       **IT IS SO ORDERED**.

       DATED this 20th day of March, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge