**MCGAUGHEY ERICKSON**
Robert J. McGaughey, OSB #800787
bob@law7555.com
Aurelia Erickson, OSB #126170
aurelia@law7555.com
Kevin Kress, OSB #146003
kevin@law7555.com
65 SW Yamhill Street, Suite 200
Portland, OR 97204
Tel. (503) 223-7555

*Liaison Counsel for Plaintiffs*

[Additional counsel listed on signature page.]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

ELIA AZAR and DEAN ALFANGE, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

BLOUNT INTERNATIONAL, INC., JOSHUA L. COLLINS, DAVID A. WILLMOTT, ROBERT E. BEASLEY, JR., RONALD CAMI, ANDREW C. CLARKE, NELDA J. CONNORS, E. DANIEL JAMES, HAROLD E. LAYMAN, MAX L. LUKENS, and DANIEL J. OBRINGER,

Defendants.

Case No. 3:16-CV-00483-SI

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement dated as of April 9, 2019 (the "Stipulation"), is made and entered into by and among the following Settling Parties to this action (the "Action"): (i) Lead Plaintiffs Elia Azar ("Azar") and Dean Alfange ("Alfange," and with Azar, "Lead Plaintiffs"); and (ii) Blount International, Inc. ("Blount" or the "Company"), Joshua L. Collins, David A. Willmott, Robert E. Beasley, Jr., Ronald Cami, Andrew C. Clarke, Nelda J. Connors, E. Daniel James, Harold E. Layman, Max L. Lukens, and Daniel J. Obringer (collectively, the "Board" or the "Individual Defendants," and together with Blount, the "Defendants"), by and through their counsel of record in the Action. This Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims upon and subject to the terms and conditions hereof.

## I. THE ACTION

On December 10, 2015, Blount announced that the Company would be acquired by American Securities LLC ("American Securities") and P2 Capital Partners LLC ("P2"), for $10 per share, or approximately $855 million (the "Transaction").

On March 9, 2016, Blount filed a definitive proxy statement on a Schedule 14A (the "Proxy Statement") with the U.S. Securities and Exchange Commission (the "SEC"), setting forth certain information regarding the Transaction and announcing that the special meeting where Blount stockholders would be asked to vote on the Transaction would occur on April 7, 2016.

On March 21, 2016, Azar and Alfange filed a Class Action Allegation Complaint (Doc. 1) on behalf of themselves and all other similarly situated public stockholders of Blount: (1) against Blount and the Individual Defendants for violating Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n, for alleged material misrepresentations and omissions in the Proxy Statement; (2) against the Individual Defendants and the Purchasers (defined below) for violating Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), for acting as

"control persons" with respect to such alleged violations; and (3) against American Securities, P2, ASP Blade Intermediate Holdings, Inc. ("Merger Parent"), and ASP Blade Merger Sub, Inc. ("Merger Sub," and collectively with American Securities, P2, and Merger Parent, the "Purchasers"), Joshua L. Collins and David A. Willmott for aiding and abetting such alleged violations.

Also on March 21, 2016, Azar and Alfange filed a Motion for a Preliminary Injunction (Doc. 2), which sought to enjoin the April 7, 2016 vote on the Transaction, and a Motion for Expedited Discovery and Proceedings (Doc. 3), which sought on an expedited basis both discovery and a hearing related to Plaintiffs' preliminary injunction motion.

On March 29, 2016, the Court denied Azar's and Alfange's Motion for Expedited Discovery and Proceedings (Docs. 38), and Azar and Alfange withdrew their Motion for a Preliminary Injunction on March 30, 2016 (Doc. 39).

On April 7, 2016, the majority of Blount's shares of common stock outstanding were voted in favor of the Transaction; and on April 12, 2016, the Transaction was completed.

On July 1, 2016, the Court appointed Azar and Alfange as Lead Plaintiffs and approved Lead Plaintiffs' selection of Johnson & Weaver, LLP and Levi & Korsinsky, LLP as Lead Counsel and of McGaughey Erickson as Liaison Counsel. (Doc. 46.)

On August 1, 2016, Lead Plaintiffs filed their Amended Class Action Allegation Complaint. (Doc. 49.)

On September 16, 2016, Defendants and the Purchasers filed motions to dismiss the Amended Complaint. (Docs. 56-58.) Lead Plaintiffs opposed the motions on October 31, 2016. (Doc. 59.) On November 3, 2016, Lead Plaintiffs voluntarily dismissed the Purchasers from this Action. (Doc. 60.) On November 21, 2016, Defendants filed their reply brief in further support of

their motion to dismiss. (Doc. 62.) Oral argument on Defendants' motion to dismiss was held on December 19, 2016. (Doc. 66.)

On March 20, 2017, the Court denied Defendants' motion to dismiss, finding that Lead Plaintiffs' Amended Class Action Allegation Complaint stated a claim for violations of §§ 14(a) and 20(a) of the Exchange Act. (Doc. 68.) The Court denied the Purchasers' motion to dismiss as moot because Lead Plaintiffs had voluntarily dismissed the Purchasers. (*Id*.)

On April 17, 2017, Defendants answered Lead Plaintiffs' Amended Class Action Allegation Complaint. (Doc. 81.)

On May 30, 2017, Lead Plaintiffs and Defendants filed a Joint Rule 26(f) Case Plan, and the Court adopted the parties' joint proposed schedule on June 5, 2017. (Doc. 84, 88). Between summer 2017 and fall 2018, the Settling Parties conducted extensive discovery. Following and alongside extended meet-and-confer sessions and several discovery disputes heard by the Court, Lead Plaintiffs, Defendants, and third parties collectively produced hundreds of thousands of pages of documents, and 19 party and non-party depositions were taken. Moreover, the Settling Parties engaged in extensive written discovery, including multiple sets of requests for production of documents and interrogatories and requests for admissions.

Throughout discovery, the Settling Parties engaged in periodic discussions concerning a potential resolution of the Action. In particular, the Settling Parties attended an in-person mediation on October 17, 2017 before a well-respected independent third-party mediator, David Geronemus, and engaged in multiple follow-up telephone conversations with the mediator.

On October 12, 2018, following several further telephone calls with the mediator, the Settling Parties attended a second in-person mediation before David Geronemus. At the conclusion of the mediation, the Settling Parties agreed to resolve the Action pursuant to the terms forth herein.

## II. CLAIMS AND BENEFITS OF SETTLEMENT

Lead Plaintiffs believe that the claims asserted in the Action have merit and that the evidence developed to date supports their claims. However, Lead Plaintiffs and their counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through summary judgement, trial, and appeals. Lead Plaintiffs and their counsel also have taken into account the uncertain outcome and the risks of any litigation, especially in complex actions such as the Action, and the difficulties and delays inherent in such litigation. Lead Plaintiffs and their counsel also are mindful of the inherent problems of proof under and possible defenses to the violations asserted in the Action. Lead Plaintiffs and their counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class. Based on their evaluation, Lead Plaintiffs and their counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Lead Plaintiffs and the Class.

## III. DEFENDANTS' DENIAL OF WRONGDOING AND LIABILITY

Each Defendant has denied and continues to deny each and all of the claims and contentions alleged in the Action. Each Defendant has expressly denied and continues to deny all allegations of wrongdoing or liability arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action, including, but not limited to, all contentions concerning Defendants' business, conduct and public statements, as well as contentions that any such conduct or events constitute wrongdoing or give rise to legal liability. Defendants also have denied and continue to deny, *inter alia*, the allegations that Lead Plaintiffs or the Class suffered damages or that Lead Plaintiffs or the Class were harmed in any way by any of Defendants or by the conduct alleged in the Action.

Nonetheless, Defendants have concluded that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

Defendants have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Action. Further, Defendants recognize the expense of defending this Action. Further, this stipulation, whether or not consummated, together with any proceedings related to any settlement, or any terms of any settlement, whether or not consummated, shall in no event be construed as or deemed to be evidence supporting, or an admission or concession on the part of any Defendant with respect to, any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in any of the defenses that any of the Defendants have or could have asserted. Defendants state that they are entering into this Settlement (as defined below) solely in order to eliminate the burden, expense, uncertainty, and risk of further litigation, and to avoid the business disruptions associated therewith.

## IV. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (for themselves and the Class Members) and Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Action and the Released Claims shall be fully, finally, and forever compromised, settled, released, and discharged, and the Action shall be dismissed with prejudice, and without costs except as expressly set forth herein as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows.

### 1. DEFINITIONS

As used herein the following terms have the meanings specified below. In the event of any inconsistency between any definition set forth below and any definition in any other document related to the Settlement, the definition set forth below shall control.

1.1. "Action" means the above-titled action, captioned *Azar v. Blount International, Inc., et al.*, Case No. 3:16-CV-00483-SI, pending in the United States District Court for the District

of Oregon before the Honorable Michael H. Simon.

1.2. "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.3. "Blount" means Blount International, Inc.

1.4. "Claims Administrator" means the firm designated by Lead Counsel, following consultation with and agreement by the Lead Plaintiffs, subject to Court approval, to provide all notices approved by the Court to Class Members, to process Proofs of Claim, and to administer the Settlement.

1.5. "Class Member" means any member of the Class.

1.6. "Class" means all persons who held Blount common stock continuously from March 4, 2016, the record date for voting on the Transaction, through April 12, 2016, when the Transaction was completed. Excluded from the Class are Defendants, the Purchasers, the officers and directors of the Company at all relevant times, members of the immediate families of the Individual Defendants and their legal representatives, heirs, successors or assigns, any entity in which Defendants have or had a controlling interest, and any Person who timely and validly seeks exclusion from the Class.

1.7. "Complaint" means the Amended Class Action Allegation Complaint filed by Lead Plaintiffs on August 1, 2016. (Doc. 49.)

1.8. "Court" means the United States District Court for the District of Oregon, Portland Division.

1.9. "Defendants" means Blount and the Individual Defendants.

1.10. "Defense Counsel" means the law firms Cravath, Swaine & Moore LLP, Davis Polk & Wardwell LLP, Kirkland & Ellis LLP, Miller Nash Graham & Dunn LLP and Stoel Rives

LLP.

1.11. "Effective Date" means the first date by which all of the events and conditions specified in ¶ 8.1 of this Stipulation have been met and have occurred.

1.12. "Escrow Account" means the interest-bearing escrow account to be established by the Escrow Agent at a federally insured banking institution into which the Settlement Amount shall be deposited.

1.13. "Escrow Agent" means a reputable financial institution to be selected by Lead Counsel, with the consent of Defense Counsel, which shall not unreasonably be withheld.

1.14. "Escrow Agreement" means the escrow agreement between Lead Counsel, on behalf of Lead Plaintiffs and the Class, and the Escrow Agent. The terms of the Escrow Agreement shall be subject to approval by Defense Counsel, which shall not unreasonably be withheld.

1.15. "Final", with respect to the Judgment, means the date on which the last of the following shall have occurred: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken, which date shall be deemed to be thirty (30) calendar days following the entry of the Judgment, unless the date to take such an appeal shall have been extended by Court order or otherwise; and (iii) if a motion to alter or amend is filed or if an appeal is taken, the determination of that motion or appeal in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of the Settlement, but shall not include any appeal which concerns only the issue of attorneys' fees and expenses or any allocation

of the Settlement Fund, as defined below.

1.16. "Final Approval Hearing" means the hearing to determine whether the proposed Settlement embodied by this Stipulation is fair, reasonable, and adequate to the Class, and whether the Court should enter a Judgment approving the proposed Settlement.

1.17. "Individual Defendants" means Joshua L. Collins, David A. Willmott, Robert E. Beasley, Jr., Ronald Cami, Andrew C. Clarke, Nelda J. Connors, E. Daniel James, Harold E. Layman, Max L. Lukens, and Daniel J. Obringer.

1.18. "Judgment" means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit E, or such other substantially similar form as is entered by the Court that does not prompt either Settling Party to terminate the Settlement, that terminates, pursuant to Federal Rule of Civil Procedure 54(b), all proceedings of any kind in this Action as between Plaintiffs (including the Class) and Defendants and dismisses the Action and all claims therein against Defendants with prejudice to all Releasors.

1.19. "Lead Counsel" means Johnson Fistel, LLP, 99 Madison Avenue, 5th Floor, New York, New York 10016, and Levi & Korsinsky, LLP, 1111 Summer Street, Suite 403, Stamford, Connecticut 06905.

1.20. "Lead Plaintiffs" means Elia Azar and Dean Alfange.

1.21. "Net Settlement Fund" means the fund described in ¶ 6.2(d).

1.22. "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, which, subject to the approval of the Court, will be sent to the Class substantially in the form attached hereto as Exhibit B.

1.23. "Notice and Administration Expenses" means all costs, fees, and expenses incurred in connection with providing notice to the Class and the administration of the Settlement, including

but not limited to: (i) providing notice of the proposed Settlement by mail, publication, and other means to Class Members; (ii) receiving and reviewing claims; (iii) applying the allocation; (iv) communicating with Persons regarding the proposed Settlement and claims administration process; (v) distributing the proceeds of the Settlement; (vi) fees related to the escrow account and investment of the Settlement Fund; and (vii) Taxes and Tax Expenses.

1.24. "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.25. "Plaintiffs" means Lead Plaintiffs and the Class defined herein.

1.26. "Preliminary Approval Order" means the preliminary approval order (substantially in the form attached hereto as Exhibit A) as entered by the Court for mailing and publication of notice to the Class.

1.27. "Proof of Claim" means the Proof of Claim and Release form substantially in the form attached as Exhibit C hereto.

1.28. "Purchasers" means American Securities LLC, P2 Capital Partners LLC, ASP Blade Intermediate Holdings, Inc., and ASP Blade Merger Sub, Inc.

1.29. "Related Parties" means each of the Parties' past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, principals, controlling shareholders, attorneys, accountants, auditors, financial advisors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, affiliates, joint ventures, assigns, spouses, heirs, estates, related or affiliated entities, any entity in which any Party has a controlling interest, any members of any Party's immediate family, or any trust of which any Party is the settlor or which

is for the benefit of any Party's immediate family.

1.30. "Released Claims" means any and all claims that have or could have been asserted in this Litigation, as well as and any all claims that have been asserted, could have been asserted, or could be asserted now or in the future by any Class Member in his, her, or its capacity as a purchaser, seller, or holder of Blount common stock that have arisen from, could have arisen from, or relate in any manner to the Transaction, the process leading up to the Transaction, the Proxy Statement and any supplement thereto, or the financial projections referenced in the Complaint. "Released Claims" include "Unknown Claims," as defined in ¶ 1.40 of this Stipulation. Notwithstanding any other provisions to the contrary herein, "Released Claims" do not include claims to enforce the Settlement.

1.31. "Released Persons" means each and all of Defendants and each of their respective Related Parties.

1.32. "Releasors" refers jointly and severally, individually and collectively, to Lead Plaintiffs and all Class Members, and their Related Parties.

1.33. "Settlement Amount" means Three Million, Fifty-Nine Thousand U.S. Dollars ($3,059,000.00) in cash.

1.34. "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto after being transferred to an account controlled by the Escrow Agent, and which may be reduced by payments or deductions as provided for herein or by court order.

1.35. "Settlement" means the settlement contemplated by this Stipulation.

1.36. "Settling Parties" means, collectively, Lead Plaintiffs and Defendants.

1.37. "Stipulation" means this Stipulation of Settlement, including the recitals and Exhibits hereto.

1.38. "Summary Notice" means the Summary Notice of Pendency and Proposed Settlement of Class Action, which, subject to the approval of the Court, will be published substantially in the form attached as Exhibit D hereto.

1.39. "Transaction" means the transaction announced on December 10, 2015 and completed on April 12, 2016 pursuant to which the Purchasers acquired all of the outstanding shares of Blount common stock for $10.00 per share.

1.40. "Unknown Claims" means any Released Claims which Lead Plaintiffs or any Class Member, as of the Effective Date, does not know or suspect to exist in his, her, or its favor, whether direct, indirect, or derivative, including those which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision not to object to this Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Lead Plaintiffs shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law that is similar, comparable or equivalent to California Civil Code § 1542, or that might otherwise operate to bar or limit the release of Unknown Claims. Lead Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she, or it

now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiffs shall expressly release and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, expressly, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to and notwithstanding the subsequent discovery or existence of such different or additional facts. Lead Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

2. **THE SETTLEMENT**

2.1. **The Settlement Fund**

2.1.1. Within fifteen (15) business days following (a) entry on the Court's docket of the Preliminary Approval Order, either in or substantially in the form attached hereto as Exhibit A, granting the Court's preliminary approval of this Settlement and (b) receipt by Defense Counsel from Lead Counsel of full and complete wiring or other instructions necessary for such payment, an executed W-9 for the Settlement Fund, and payee name and address for delivery of payment by check, Blount shall transfer or cause to be transferred the Settlement Amount to the Escrow Agent for deposit into the Escrow Account, in full and complete settlement of the Released Claims. Defendants and their respective Related Parties shall have no further monetary liability after payment of the Settlement Amount, and in no event shall any Defendant (or any of Defendants'

respective Related Parties) be liable for payment of any amount other than the Settlement Amount, including, without limitation, interest on the Settlement Amount or payment to Class members of their attorney's fees or reimbursement of any other fees or expenses. If the entire Settlement Amount is not timely transferred to the Escrow Agent as provided in this paragraph, the Settlement may be voided at the option of Lead Plaintiffs if: (i) Lead Counsel has notified Defense Counsel in writing of Lead Counsel's intention to terminate the Settlement, and (ii) the entire Settlement Amount is not transferred to the Escrow Agent within ten (10) business days after Lead Counsel has provided such written notice.

2.1.2. In no event shall Defendants have any responsibility, financial obligation, or liability whatsoever with respect to the operation, management, or disbursement of the escrow account once established, or with respect to the investment, distribution, use, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, use, or administration. Defendants shall likewise have no responsibility whatsoever for the allocation or distribution of the Settlement Fund and shall not be responsible or otherwise liable, including to or with Lead Plaintiffs, Lead Counsel, any Class Member, or the Claims Administrator, for any disputes relating to the amount, allocation, or distribution of any fees, costs, or awards of any kind. After making payment of the Settlement Amount in accordance with ¶ 2.1.1 herein, Defendants shall not be liable for any additional payments of any kind to Lead Plaintiffs, Class Members, Lead Counsel, or to any other person or entity with respect to this Settlement or Stipulation.

2.2. **The Escrow Agent**

2.2.1. The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶ 2.1.1 in instruments backed by the full faith and credit of the United States Government or fully insured

by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. The Settlement Fund shall bear all risks related to investment of the Settlement Fund in accordance with the guidelines set forth in this paragraph.

2.2.2. The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation and by an order of the Court.

2.2.3. Subject to further order(s) and/or direction(s) as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Stipulation.

2.2.4. All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.2.5. Lead Counsel shall be solely responsible for designating a Claims Administrator, subject to approval by the Court. The Escrow Agent may pay to the Claims Administrator from the Settlement Fund, without prior approval from Defendants or the Court, the costs and expenses reasonably and actually incurred in connection with the administration of the Settlement, including, without limitation: the cost of identifying and locating Class Members, mailing the Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release and publishing notice (such amount shall include, without limitation, the actual costs of publication, printing and mailing the Notice, and reimbursement to nominee owners for forwarding notice to their beneficial owners), soliciting Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any, and the administrative expenses incurred

and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims (“Notice and Administration Expenses”).

2.2.6. Except as set forth in this ¶ 2.2.6, Defendants will not have any responsibility for, involvement in, or liability for, and Defendants will not be requested or required to pay any costs, fees, or expenses in connection with, providing notice to putative Class Members, the administration of the Settlement Fund, the allocation, disbursement, and payment of the Settlement proceeds, or the reviewing, challenging, or determination of claims of putative Class Members. Defendants shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms, including providing information in electronic searchable format from Blount transfer records concerning the identity of putative Class Members. To that end, within fourteen (14) calendar days of the execution of this Stipulation, Defendants shall provide or cause to be provided to Lead Counsel information reasonably available from Blount’s transfer agent regarding the identity and the addresses of putative Class Members. Any reasonable charges, fees, or expenses incurred by Blount for providing this information, to the extent there are any, will be paid from the Settlement Fund.

2.3. **Taxes**

2.3.1. The Settling Parties agree to treat the Settlement Fund as being at all times a “qualified settlement fund” within the meaning of Treas. Reg. § 1.468B-1. In addition, the Claims Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.3.1, including the “relation-back election” (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Claims Administrator to timely and properly prepare and deliver the necessary documentation for

signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

2.3.2. For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Claims Administrator. The Claims Administrator shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described in ¶ 2.3.1 hereof) shall be consistent with this ¶ 2.3.2 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 2.3.3 hereof.

2.3.3. All (i) taxes (including any interest, penalties, or estimated taxes) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendants or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 2.3 (including, without limitation, expenses of tax attorneys and/or accountants, mailing and distribution costs, and expenses relating to filing (or failing to file) the returns described in this ¶ 2.3) ("Tax Expenses"), shall be paid out of the Settlement Fund; in no event shall Defendants, their respective Related Parties, or their counsel have any liability or responsibility for Taxes or Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Claims Administrator out of the Settlement Fund without prior order from the Court and the Claims Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized

Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). The Settling Parties agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.3.

2.3.4. This is not a claims-made settlement. As of the Effective Date, Defendants, their insurance carriers, and/or such other persons or entities funding the Settlement on the Defendants' behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

2.4. **Termination or Cancellation of Settlement**

2.4.1. In the event that the Settlement is not approved, is terminated, is canceled, or fails to become effective for any reason, the provisions of ¶¶ 8.3, 8.4, 8.5 and/or 8.6 herein shall be followed.

3. **CLASS CERTIFICATION**

3.1. The Settling Parties agree that certification of the Class, for settlement purposes only, is appropriate in the Action. For purposes of this Settlement only, the Class comprises all Class Members, as defined in ¶ 1.6 above. Nothing in this Stipulation shall serve, either directly or indirectly, as evidence or support for certification of a class other than for settlement purposes, and the Settling Parties intend that the provisions herein concerning certification of the Class shall have no effect whatsoever in the event the Settlement does not become Final, as defined in ¶ 1.15 above.

3.2. The Settling Parties therefore stipulate to: (i) certification, for settlement purposes only, of the Class (as defined above), pursuant to Rules 23(a) and (b)(3) of the Federal Rules of

Civil Procedure; (ii) appointment of Lead Plaintiffs as the class representatives; and (iii) appointment of Lead Counsel as class counsel. Certification of the Class shall be binding only with respect to the Settlement of the Action and only if the Order and Final Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs.

## 4. PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL HEARING

4.1. Promptly after execution of this Stipulation, the Settling Parties shall submit this Stipulation together with its Exhibits to the Court and shall jointly apply for entry of the Preliminary Approval Order substantially in the form of Exhibit A attached hereto. During the period from execution of this Stipulation to the Effective Date, which shall include the period following entry of the Preliminary Approval Order, each of the Settling Parties, and their respective heirs, executors, administrators, successors, and assigns and all persons acting in concert with any such person or entity, agree not to institute, maintain, or prosecute any or all Settled Claims against any or all of the Defendants.

4.2. The Settling Parties shall request, inter alia, the preliminary approval of the Settlement set forth in this Stipulation and approval for the mailing of the "Notice" to Class Members, substantially in the form of Exhibit B attached hereto, and publication of the Summary Notice, substantially in the form of Exhibit D attached hereto. The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed allocation of the Settlement Fund, the general terms of the Fee and Expense Application by Lead Counsel and the date of the Final Approval Hearing. Lead Counsel will be responsible for providing the Notice to the Class. Any Notice and Administration Expenses shall be paid from the Settlement Fund as provided in ¶¶ 2.2.5 and 6.2 hereof.

4.3. The Settling Parties shall request that, after notice is given, the Court hold a Final

Approval Hearing and approve the Settlement of the Action as set forth herein. Lead Counsel will also request that the Court approve the Fee and Expense Application.

5. **RELEASES**

5.1. The obligations incurred pursuant to this Stipulation shall be in full and final disposition of this Action and any and all Released Claims. By operation of the Judgment, upon the Effective Date of this Settlement, each and all of the Lead Plaintiffs and Class Members, on behalf of themselves and their respective heirs, executors, administrators, successors, and assigns and all persons acting in concert with any such person shall, with respect to each and every Released Claim, waive, release, forever discharge, and dismiss, with prejudice, and agree not to institute, maintain, or prosecute any or all Released Claims against any or all of the Released Persons, and shall be permanently and finally enjoined, without the necessity of posting a bond, from commencing or prosecuting any actions or other proceedings asserting any of the Released Claims either directly, indirectly, or representatively against any of the Released Persons or Defense Counsel herein. This injunction expressly extends to all claims covered by this Stipulation and all Releasors defined herein.

5.2. The Proof of Claim and Release to be executed by Lead Plaintiffs and Class Members shall release all Released Claims (including Unknown Claims) against the Released Persons and shall be substantially in the form contained in Exhibit C attached hereto.

5.3. Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Lead Plaintiffs, each and all of the Class Members, and their attorneys (including, without limitation, Lead Counsel), employees, heirs, successors, and assigns from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with,

the institution, prosecution, assertion, settlement, or resolution of the Action. Claims to enforce the Settlement are not released.

5.4. Upon the Effective Date, Lead Plaintiffs and all Class Members and anyone claiming through or on behalf of any of them, are forever barred and enjoined from commencing, instituting, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any of the Released Claims against any of the Released Persons, and each of them.

## 6. ADMINISTRATION AND CALCULATION OF CLAIMS, FINAL AWARDS, AND SUPERVISION AND DISTRIBUTION OF THE SETTLEMENT FUND

6.1. The Claims Administrator, subject to such supervision and direction from the Court or Lead Counsel as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants. Except for the obligation to pay the Settlement Amount and, as set forth in ¶ 2.2.6 above, to provide reasonable cooperation with respect to the identification of putative Class Members from Blount's shareholder transfer records (subject to ¶ 2.2.6), Defendants shall have no liability, obligation, or responsibility for the administration of the Escrow Account or the Settlement, for the allocation, disbursement, and payment of the Settlement Fund or Net Settlement Fund, or for the reviewing, challenging, or determination of claims of putative Class Members. Lead Counsel and the Claims Administrator shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proofs of Claim submitted in the interest of achieving substantial justice.

6.2. At the times set forth and in accordance with this Stipulation, the Settlement Fund shall be applied: (a) to pay all Notice and Administration Expenses; (b) to pay the Taxes and Tax Expenses described in ¶ 2.3 hereof; (c) to pay Lead Plaintiffs' expenses, including any lost wages,

as provided for by 15 U.S.C. §78u-4(a)(4), and Lead Plaintiffs' attorneys' fees and expenses (the "Fee and Expense Award"); and (d) to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by this Stipulation or the Court.

6.3. Upon the Effective Date and thereafter, and in accordance with the terms of this Stipulation or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Claims Administrator, subject to the Court's jurisdiction, shall distribute the Net Settlement Fund to Authorized Claimants, subject to and in accordance with the following:

6.3.1. Within ninety (90) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit C attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release and as are reasonably available to such Person. The Claims Administrator shall retain copies of the Proofs of Claim referred to in this ¶ 6.3.1 for at least one (1) year after the disbursement of the Net Settlement Fund by the Claims Administrator and shall provide copies of individual Proofs of Claim to Defendants' Counsel at no expense on a case-by-case basis if requested to do so;

6.3.2. Except as otherwise ordered by the Court, any and all Class Members who fail to timely submit a Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be permanently barred and enjoined from bringing any action, claim, or other

proceeding of any kind against any Released Persons concerning any Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund is not materially delayed thereby;

6.3.3. Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to ¶ 6.3.5 below;

6.3.4. Any Proof of Claim that does not meet the submission requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall notify, in a timely fashion and in writing, the Claimant whose Proof of Claim it proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose claim is to be rejected has the opportunity to remedy curable deficiencies in the Proof of Claim submitted if the Claimant so desires;

6.3.5. If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶ 6.3.4 above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court, if so desired. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court;

6.3.6. Following the Effective Date, the Claims Administrator shall distribute to each Authorized Claimant his, her, or its pro rata share of the Net Settlement Fund; and

6.3.7. Defendants shall not have a reversionary interest in the Net Settlement Fund. If there is any balance of the Net Settlement Fund remaining after six (6) months from the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, distribute such remaining balance pro rata among Authorized Claimants who negotiated the checks sent to them. These redistributions shall be repeated until the balance in the Net Settlement Fund is de minimis (i.e., is insufficient to cover the cost of another distribution) and such remaining balance shall then be donated to an appropriate non-profit organization designated by Lead Counsel.

6.4. Defendants and their respective Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to, the distribution of the Settlement Fund, any investment or distribution of the Settlement Fund, the determination, administration, or calculation of claims, final awards, the timing, supervision, and distribution of the Settlement Fund, any application for attorneys' fees and expenses, the payment or withholding of Taxes, or any losses incurred in connection therewith.

6.5. No Person shall have any claim against Lead Plaintiffs, Lead Counsel, Defendants, Defense Counsel or the Claims Administrator, or their respective Related Parties, or other Person designated by Lead Counsel based on the distributions made substantially in accordance with this Stipulation and the Settlement contained herein or further order(s) of the Court. This does not include any claim by any party for breach of this Stipulation.

6.6. It is understood and agreed by the Settling Parties that any allocation of the Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of or a condition to this Stipulation and the Settlement set forth herein, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or

proceeding relating to the allocation of the Settlement Fund shall not operate to terminate or cancel this Stipulation or the releases set forth herein, or affect or delay the finality of the Court's Judgment approving this Stipulation and the releases and Settlement set forth herein, or any other orders entered pursuant to this Stipulation.

7. **ATTORNEYS' FEES AND EXPENSES**

7.1. The procedure for and the allowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses, or Lead Plaintiffs' expenses (including lost wages) paid pursuant to 15 U.S.C. § 78u-4(a)(4), to be paid out of the Settlement Fund, are not part of or a condition to the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation. Any order or proceeding relating to the Fee and Expense Application, or Lead Plaintiffs' expense application pursuant to 15 U.S.C. § 78u-4(a)(4), or any appeal from any order relating thereto or reversal or modification of either such application, shall not operate to terminate or cancel this Stipulation or the releases set forth herein, or affect or delay the finality of the Judgment approving this Stipulation and the releases and Settlement of the Action set forth herein.

7.2. Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund for: (a) an award of attorneys' fees; (b) the payment of reasonable expenses, including Lead Plaintiffs' expenses (including lost wages) paid pursuant to 15 U.S.C. § 78u-4(a)(4); plus (c) the cost of fees of experts or consultants incurred in connection with prosecuting the Action. Lead Counsel reserve the right to make additional applications to the Court from the Settlement Fund for fees and expenses incurred.

7.3. The Fee and Expense Award shall be paid to Lead Counsel from the Settlement

Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses. Lead Counsel shall thereafter allocate the attorneys' fees among plaintiffs' counsel in accordance with any agreement related thereto. In no event shall Defendants and their respective Related Parties have responsibility for, interest in, or liability whatsoever with respect to such allocation or distribution. In the event that the Effective Date does not occur, or either the Judgment or the order making the Fee and Expense Award is reversed or modified by final non-appealable order, or this Stipulation is canceled or terminated for any other reason, and in the event that the Fee and Expense Award has been paid to any extent, then, within ten (10) calendar days from receiving notice from Defense Counsel or from a court of appropriate jurisdiction, Lead Counsel and any other plaintiff's counsel receiving fees and expenses will refund to the Settlement Fund such fees and expenses previously paid to Lead Counsel or any other plaintiff's counsel from the Settlement Fund in an amount consistent with such reversal or modification, together with interest on that amount at a rate commensurate with that earned on the Settlement Fund during the intervening period. Any refunds required pursuant to this paragraph shall be the obligation of each plaintiff's counsel receiving fees or expenses (to the extent of such amounts received) to make appropriate refunds or repayments to the Settlement Fund. Each plaintiff's counsel, as a condition of receiving such fees, expenses and/or costs on behalf of itself and each partner and/or shareholder of it, agrees that its law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

7.4. Lead Plaintiffs may submit an application for payment for their time and expenses incurred in the prosecution of the Action.

7.5. Defendants and their respective Related Parties shall have no responsibility for or liability with respect to any allocation among plaintiffs' counsel and/or any other Person who may

assert some claim thereto, of any attorneys' fee and expense award that the Court may make in the Action.

8. **CONDITIONS AND EFFECT OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION OF SETTLEMENT**

8.1. The Effective Date of this Stipulation shall be conditioned on the occurrence of all the following events:

(a) Execution of this Stipulation and such other documents as may be required to obtain final Court approval of the Stipulation in a form satisfactory to the Settling Parties;

(b) the Court has entered the Preliminary Approval Order, as set forth in ¶ 4.1 hereof;

(c) the Class has been certified, as provided in ¶¶ 3.1 and 3.2 hereof;

(d) Defendants have made the contribution to the Settlement Fund as set forth in ¶ 2.2.1 hereof;

(e) the Court has entered the Judgment substantially in the form of Exhibit E attached hereto; and

(f) the Judgment has become Final, as set forth in ¶ 1.15 hereof.

8.2. Upon the occurrence of all of the events referenced in ¶ 8.1 hereof, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall, subject to ¶ 8.8, be absolutely and forever extinguished. If all of the conditions specified in ¶ 8.1 hereof are not met, then this Stipulation shall be canceled and terminated subject to ¶¶ 8.3, 8.4 and/or 8.5 hereof unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with this Stipulation.

8.3. In the event this Stipulation shall terminate, be canceled, or shall not become effective for any reason, within ten (10) days after written notification of such event is sent by

counsel for Defendants or Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less expenses which have either been incurred or disbursed pursuant to ¶¶ 2.2.3 and 2.2.5 hereof, shall be refunded and transferred by the Escrow Agent pursuant to written instructions from Defense Counsel. The Escrow Agreement will contain such provisions as are necessary or appropriate to effectuate this Paragraph, including but not limited to a provision stating that the return of the Settlement Amount required in this Paragraph shall not require any approval from Lead Counsel. At the request of Defense Counsel, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, at the written direction of Defense Counsel.

8.4. In the event that the Court declines to approve this Stipulation or the Settlement set forth in this Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Action as of April 8, 2019, the day prior to the execution of this Stipulation. In such event, the terms and provisions of this Stipulation, with the exception of ¶¶ 1.1-1.40, 2.2.2-2.2.6, 8.3-8.6, and 10.1 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

8.5. In the event the Settlement is terminated or any of the requirements of the "Effective Date" specified in ¶ 8.1 are, for any reason, not satisfied, then the Settlement and this Stipulation shall be null and void, without prejudice, and none of its terms shall be effective or enforceable except that neither Lead Plaintiffs nor any other putative Class Member may use the fact of execution of this Stipulation as a basis to argue that Defendants have in any way

circumscribed, limited, or waived their ability to oppose, for any reason, certification of a class; and the fact and terms of the Settlement, this Stipulation, and all settlement discussions shall not be admissible in any trial of this Action or any other proceeding and shall not be used by Lead Plaintiffs against or to the prejudice of the Defendants or by the Defendants against or to the prejudice of Lead Plaintiffs in any court filings, depositions, at trial, or otherwise.

8.6. An order of the Court concerning the allocation of the Settlement Fund or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Plaintiffs or any of plaintiff's counsel, or a modification or reversal on appeal of any such order of the Court, shall not constitute grounds for cancellation or termination of this Stipulation.

8.7. If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, neither Lead Plaintiffs nor any of their counsel shall have any obligation to repay any amounts incurred or disbursed pursuant to ¶¶ 2.2.3 or 2.2.5 hereof.

8.8. If (a) a case is commenced with respect to any Defendant under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver, or conservator is appointed under any similar law, (b) a final order of a court of competent jurisdiction is entered determining the transfer of the Settlement Fund, or a material portion thereof, by or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction, and (c) any portion of the Settlement Fund is required to be returned and is returned to such Defendant (or such Defendant's estate), then, at Lead Plaintiffs' option, as to such Defendant, the releases given and judgment entered in favor of such Defendant pursuant to this Stipulation shall be null and void. Alternatively, Lead Plaintiffs may terminate the Settlement, return the Settlement Fund (net of amounts paid pursuant to ¶¶ 2.2.3 and 2.2.5) pursuant to instructions from Defense Counsel and the releases given, and the judgment entered as to all Defendants shall be null and void.

9. **REQUESTS FOR EXCLUSION OR OBJECTIONS**

9.1. Any Class Member requesting exclusion from the Class shall be required to provide the following information to the Claims Administrator: (a) name; (b) address; (c) telephone number; (d) amount of Blount common stock held on the Record Date; and (e) a statement that the Person wishes to be excluded from the Class. Unless otherwise ordered by the Court, any Class Member who does not submit a timely written request for exclusion as provided by this ¶ 9.1 shall be bound by the Settlement in this Stipulation. The parties shall request that the deadline for submitting requests for exclusion be at least twenty-one (21) calendar days prior to the Final Approval Hearing.

9.2. If a request for exclusion is untimely, or is invalid because it does not otherwise comply with the criteria or contain all of the information specified in the Preliminary Approval Order and in the Notice, then it shall be void and of no effect, and that person or entity shall remain part of the Class in this Action and shall be bound by all of the terms of this Stipulation and Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for herein, and will be barred and enjoined from bringing any action against the Defendants concerning the Settled Claims. Any disputes regarding whether or not a request for exclusion is timely and valid, and thus effective, shall be resolved by the Court.

9.3. The Claims Administrator shall electronically send copies of all requests for exclusion in PDF format (or such other format as shall be mutually agreed by the Settling Parties) to Defense Counsel and to Lead Counsel expeditiously (but not more than five (5) days) after the Claims Administrator receives such a request. As part of the motion papers in support of the Settlement of the Action, Lead Counsel will cause to be provided a list of all the persons who have requested exclusion from the Class.

10. **NO ADMISSION OF WRONGDOING**

10.1. This Stipulation, whether or not consummated, and any proceedings taken pursuant to it:

(a) shall not be offered or received against any Defendant or Lead Plaintiff as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any Defendant or Lead Plaintiff with respect to the truth of any fact alleged by the Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of any Defendant;

(b) shall not be offered or received against any Defendant or Lead Plaintiff as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Defendant;

(c) shall not be offered or received against any Defendant or Lead Plaintiff as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any Defendant, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, the Settling Parties may refer to it to effectuate the liability protection granted them hereunder; and

(d) shall not be construed against any Defendant or Lead Plaintiff as an admission or concession that the consideration to be given hereunder represents the amount which could or would have been recovered after trial.

11. **MISCELLANEOUS PROVISIONS**

11.1. The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

11.2. The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action. The Settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any allegations, claims, or defenses whatsoever. The Judgment will contain a finding that, during the course of the Action, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Action was brought or defended in bad faith or without a reasonable basis.

11.3. Defendants may file this Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.4. In the event that any part of this Stipulation is found to be unlawful, void, unconscionable, or against public policy by a court of competent jurisdiction, the remaining terms and conditions of this Stipulation shall remain intact.

11.5. All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation, pursuant to their terms.

11.6. All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

11.7. This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

11.8. This Stipulation and the Exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs.

11.9. Lead Counsel, on behalf of the Class, are expressly authorized by Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Stipulation made pursuant to ¶ 11.8 on behalf of the Class which they deem appropriate.

11.10. Each of Defendants warrants and represents that he, she, or it is not "insolvent" within the meaning of 11 U.S.C. § 101(32) as of the time this Stipulation is executed and as of the time any payments are transferred or made as required by this Stipulation.

11.11. This Stipulation may be executed in one or more counterparts, including by signature transmitted by facsimile or email in pdf format. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

11.12. This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties and Members of the Class, any and all Released Persons and any corporation, partnership, or other entity into or with which any party hereto may merge, consolidate, or reorganize.

11.13. The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

11.14. This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Oregon, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Oregon without giving effect to that state's choice-of-law principles.

11.15. A waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

11.16. This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared initially by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

11.17. All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Stipulation to effectuate its terms.

IN WITNESS WHEREOF, the Settling Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated as of April 9, 2019.

**JOHNSON FISTEL, LLP**

*s/ W. Scott Holleman*

W. Scott Holleman (*pro hac vice*)
E-mail: ScottH@johnsonfistel.com
99 Madison Avenue, 5th Floor
New York, New York 10016
Phone: (212) 802-1486

**LEVI & KORSINSKY, LLP**

_*s/ Shannon L. Hopkins*_________________

Shannon L. Hopkins (*pro hac vice*)
E-mail: shopkins@zlk.com
1111 Summer Street, Suite 403
Stamford, CT 06905
Phone: (203) 992-4523

*Lead Counsel for Plaintiffs*

**MCGAUGHEY ERICKSON**

Robert J. McGaughey, OSB #800787
E-mail: bob@law7555.com
Aurelia Erickson, OSB #126170
E-mail: aurelia@law7555.com
Kevin Kress, OSB #146003
E-mail: kevin@law7555.com
65 SW Yamhill Street, Suite 200
Portland, OR 97204
Phone: (503) 223-7555

*Liaison Counsel for Plaintiffs*

**MILLER NASH GRAHAM & DUNN LLP**

*s/ Joshua M. Sasaki*

Joshua M. Sasaki, P.C., OSB No. 964182
E-mail: josh.sasaki@millernash.com
Ian Christy, OSB No. 160116
E-mail: ian.christy@millernash.com
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Phone: (503) 224-5858
Fax: (503) 224-0155

*Attorneys for Defendants Blount International, Inc., Robert E. Beasley, Jr., Ronald Cami, Andrew C. Clarke, Nelda J. Connors, E. Daniel James, Harold E. Layman, Max L. Lukens, and Daniel J. Obringer*

**CRAVATH, SWAINE & MOORE LLP**

*s/ Gary A. Bornstein*

Gary A. Bornstein *(pro hac vice)*
NY Bar No. 2916815
E-mail: GBornstein@cravath.com
825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1084
Fax: (212) 474-3700

*Attorneys for Defendants Blount International, Inc., Andrew C. Clarke, Nelda J. Connors, E. Daniel James, and Harold E. Layman*

**DAVIS POLK & WARDWELL**

*s/ Lawrence Portnoy*

Lawrence Portnoy *(pro hac vice)*
NY Bar No.: 2312650
E-mail: lawrence.portnoy@davispolk.com
450 Lexington Avenue
New York, New York 10005
Phone: (212) 450-4874
Fax: (212) 450-5874

*Attorneys for Defendants Robert E. Beasley, Ronald Cami, Max L. Lukens, and Daniel J. Obringer*

**STOEL RIVES LLP**

*s/ B. John Casey*

B. John Casey, OSB No. 120025
E-mail: john.casey@stoel.com
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: (503) 224-3380
Fax: (503) 220-2480

*Attorneys for Defendants Joshua L. Collins and David A. Willmott*

**KIRKLAND & ELLIS LLP**

*s/ Nathaniel J. Kritzer*

Jay P. Lefkowitz (admitted *pro hac vice*)
E-Mail: lefkowitz@kirkland.com
Nathaniel J. Kritzer (admitted *pro hac vice*)
E-Mail: nathaniel.kritzer@kirkland.com
601 Lexington Avenue
New York, New York 10022
Phone: (212) 446-4800
Fax: (212) 446-4900

*Attorneys for Defendants Joshua L. Collins and David A. Willmott*